Douglas K. McINTYRE,
M.D., Petitioner,

v.

Debra Marie RAMIREZ and Victor Bocanegra, Both Individually and as Next Friends of Colby Alan Ramirez, A Minor, Respondents.

No. 01–1203.

Supreme Court of Texas.

Argued on Feb. 5, 2003.

Decided June 26, 2003.

**742**

James B. Ewbank, II, Maria Teresa Cantu, Ewbank & Bryam, P.C., Austin, for petitioner.

Michael Ernest Archuleta, Bill Whitehurst, Laurie Miche Higginbotham, Whitehurst Harkness Ozmun & Brees, Austin, for petitioners.

Justice WAINWRIGHT delivered the opinion of the Court.

In this medical malpractice action arising from the emergency delivery of an infant, defendant Dr. Douglas McIntyre moved for summary judgment raising the Good Samaritan statute as an affirmative defense. The Good Samaritan statute provides an affirmative defense against ordinary negligence for persons who administer emergency care, under specified circumstances. TEX. CIV. PRAC. & REM.CODE § 74.001. However, the statute does not protect from liability persons whose services were provided "for or in expectation of remuneration." *Id.* § 74.001(b)(1). The trial court granted the doctor's motion for summary judgment, but a divided court of appeals reversed, holding that the doctor failed to prove conclusively that he was entitled to protection from liability under the Good Samaritan statute. Specifically, the court of appeals held that the doctor failed to prove that he was not legally entitled to receive payment for the emergency services he rendered. 59 S.W.3d 821, 827.

This case presents a question of statutory construction: what must a person prove to establish that he or she did not act "for or in expectation of remuneration" within the meaning of this exception to immunity from liability in the Good Samaritan statute? TEX. CIV. REM. & PRAC. CODE § 74.001(b)(1). On this issue of first impression, we hold that the statute requires a person to prove that he or she would not ordinarily receive or ordinarily be entitled to receive payment under the circumstances in which the emergency care was provided. Because the summary

judgment evidence conclusively established that Dr. McIntyre satisfied these statutory requirements, we reverse the judgment of the court of appeals and remand to that court for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

On April 23, 1998, St. David's Medical Center admitted Debra Ramirez to have labor induced, as scheduled by her obstetrician and attending physician, Dr. Patricia Gunter. Dr. Gunter visited Ramirez twice during the early stages of labor that day but subsequently left the labor and delivery area. As Ramirez's labor progressed and the baby's head began to crown, Dr. Gunter still had not returned. Dr. McIntyre was on the labor and delivery floor of the Medical Center visiting one of his own patients when a nurse sent out a page for "Dr. Stork." A "Dr. Stork" page means that a delivery is in progress without a doctor present and that a doctor is needed immediately. Dr. McIntyre was not on-call for Dr. Gunter and had never treated nor seen Ramirez, but he responded to the page.

When Dr. McIntyre arrived at Ramirez's delivery room, a nurse was supporting the baby's head and told Dr. McIntyre that Ramirez was about to deliver. Ramirez had been diagnosed with gestational diabetes and the baby was macrosomic—larger than normal for his gestational age. Indications of shoulder dystocia were present. Shoulder dystocia occurs when an infant's shoulder becomes lodged against the mother's pelvic bone. Following several unsuccessful attempts to deliver the baby, Dr. McIntyre reached inside Ramirez, swept the infant's posterior arm across the baby's chest and delivered the baby's arm. Dr. McIntyre then delivered the anterior shoulder and the rest of the baby. Dr. McIntyre was in the delivery room for approximately six minutes. Dr. Gunter arrived after the delivery and resumed care of Ramirez and her baby. The baby was born with injuries to the soft tissues and nerves of his right upper extremity, neck, and shoulder, resulting in permanent neurological impairment and paralysis of his right upper extremity and shoulder girdle.

Ramirez filed suit against Dr. Gunter, Dr. McIntyre, and St. David's Medical Center for medical negligence. Dr. McIntyre moved for summary judgment based on an affirmative defense provided by the Good Samaritan statute for persons who in good faith administer emergency health care without being wilfully or wantonly negligent. *See* TEX. CIV. PRAC. & REM.CODE ch. 74. The trial court granted Dr. McIntyre's summary judgment motion and rendered final judgment in his favor. The court of appeals reversed the trial court judgment in favor of Dr. McIntyre, concluding that an issue of fact existed as to whether his emergency medical assistance to Ramirez was excluded from the statute's protection because he acted for or in expectation of remuneration. 59 S.W.3d at 826–27.

Dr. McIntyre argues that his summary judgment evidence conclusively established the elements of the Good Samaritan defense. Specifically, he proffered his uncontroverted testimony that neither he nor any doctor in Travis County would have charged a fee to Ramirez or any other person under the circumstances of this case. This testimony, he contends, proved as a matter of law that he would not ordinarily receive or be entitled to receive remuneration for his actions within the meaning of the statute. Ramirez contends that Dr. McIntyre failed to prove that he did not fall within the statutory exception

for acts performed for or in expectation of remuneration, and that doctors who provide professional services in hospitals are legally entitled to receive payment for those services as a matter of contract law. The parties' dispute highlights a practical tension between the statute's intent to encourage doctors to provide voluntary emergency medical services and the statute's requisites for the same doctors to prove that they are entitled to immunity. We granted Dr. McIntyre's petition for review to resolve this issue of statutory construction.

## II.  The Good Samaritan Statute

Under certain circumstances, the Good Samaritan statute exempts a person who responds to a medical emergency from liability for ordinary negligence.  The statute provides in relevant part:

§ 74.001   Liability for Emergency Care

(a) A person who in good faith administers emergency care ... is not liable in civil damages for an act performed during the emergency unless the act is wilfully or wantonly negligent.

(b) This section does not apply to care administered:

   (1) for or in expectation of remuneration; or

   (2) by a person who was at the scene of the emergency because he or a person he represents as an agent was soliciting business or seeking to perform a service for remuneration.

(c) If the scene of an emergency is in a hospital or other health care facility or means of medical transport, a person who in good faith administers emergency care is not liable in civil dam-

ages for an act performed during the emergency unless the act is wilfully or wantonly negligent, provided that this subsection does not apply to care administered:

   (1) by a person who regularly administers care in a hospital emergency room unless such person is at the scene of the emergency for reasons wholly unrelated to the person's work in administering health care; or

   (2) by an admitting or attending physician of the patient or a treating physician associated by the admitting or attending physician of the patient in question.

(d) For purposes of Subsections (b)(1) and (c)(1), a person who would ordinarily receive or be entitled to receive a salary, fee, or other remuneration for administering care under such circumstances to the patient in question shall be deemed to be acting for or in expectation of remuneration even if the person waives or elects not to charge or receive remuneration on the occasion in question.

TEX. CIV. PRAC. & REM.CODE § 74.001.[1]

The application of the Good Samaritan statute is divided into two scenarios defined by the physical location at which the emergency care was rendered.  *See id.* § 74.001(a), (c).  Here, the scene of the emergency was a labor and delivery room in a hospital.  Accordingly, this case implicates section 74.001(c), which applies when the scene of the emergency is a hospital. *See id.* § 74.001(c).  The parties agree that Dr. McIntyre acted in good faith and without wilful or wanton negligence.  Dr. McIntyre is therefore exempt from liability under section 74.001(c), unless he is

---

**1.** The Legislature has amended the statute, effective September 1, 2003.  Because the amendments do not apply to our decision today, all statutory references are to the Code as it existed at the time of the trial court's order.

excepted by some other provision in the statute.

## III. Applicable Tenets of Statutory Construction

We begin our analysis by reviewing the relevant principles of statutory construction. "In construing a statute, 'our primary objective is to determine and give effect to the Legislature's intent.'" *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002) (quoting *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000)). We start with the "plain and common meaning of the statute's words." *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999)). If the statutory language is unambiguous, we will interpret the statute according to its plain meaning. *Id.* However, we will not give an undefined statutory term a meaning that is out of harmony or inconsistent with other provisions in the statute. *See Needham*, 82 S.W.3d at 318. We may consider other matters in ascertaining the Legislature's intent, including the objective of the law, the legislative history, and the consequences of a particular construction. *See* Tex. Gov't Code § 311.023(1), (3), (5); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex.1994). Finally, because statutory construction is a question of law, we review the court of appeals' opinion *de novo. Gonzalez*, 82 S.W.3d at 327.

### A. For or in Expectation of Remuneration

The court of appeals concluded that a fact issue existed as to whether Dr. McIntyre fell within the subsection (b)(1) exception for care administered "for or in expectation of remuneration." The only statutory explanation of that phrase is found in section 74.001(d). Reading these two provisions together, the court of appeals determined that section 74.001(d) provides "two distinct possibilities ... for when a person is deemed to be acting for or in expectation of remuneration: when the individual would *ordinarily* (1) *receive* remuneration for administering care, or (2) *be entitled to receive* remuneration for such services." 59 S.W.3d at 824. The court concluded that Dr. McIntyre could only claim exemption from liability under the Good Samaritan statute if he proved conclusively "that he would not customarily receive remuneration for the services he performed *and* he would not legally be entitled to remuneration." *Id.*

We agree with the court of appeals that the burden of proof was on Dr. McIntyre to negate the exception for care provided for or in expectation of remuneration. By its terms, subsection (b)(1) applies to the entirety of section 74.001, including subsection (c) under which Dr. McIntyre falls. *See* Tex. Civ. Prac. & Rem. Code § 74.001(b). Furthermore, we observe that the purpose of this statute is to increase the incentive for volunteers—and particularly physicians—to respond to medical emergencies. *See Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 658 (Tex.App.-Dallas 2002, pet. denied); *Howell v. City Towing Assocs., Inc.*, 717 S.W.2d 729, 731 (Tex.App.-San Antonio 1986, writ ref'd n.r.e.); *see also* Keith, *Medical Expert Testimony in Texas Medical Malpractice Cases*, 43 Baylor L.Rev. 1, 132 n. 850 (1991) ("The Texas Good Samaritan statute was originally enacted in 1961 to encourage reluctant physicians to administer emergency care to victims without delay."). We therefore conclude that the Legislature intended that any person raising the Good Samaritan defense must prove that he or she acted

without expectation of remuneration within the meaning of subsection (b)(1).

The question, then, is what effect do we give subsection (d)? Subsection (d) clarifies the application of subsections (b)(1) and (c)(1). Specifically, subsection (d) prevents a person from waiving payment as an attempt to come within the protection of the statute when he or she would otherwise "ordinarily receive or be entitled to receive" payment. We agree with the court of appeals that subsection (d) defines two situations in which a person could be deemed to be acting for or in expectation of remuneration: when the person would ordinarily (1) receive or (2) be entitled to receive payment under the circumstances of the case. We also agree with the court of appeals that by the phrase "ordinarily receive," the first situation "speaks toward what is customary." 59 S.W.3d at 824. In other words, if a person presents evidence that he or she does not customarily receive payment under the circumstances in question, he or she can negate the first prong of subsection (d).[2]

### B. Plain and Ordinary Meaning

■ However, we disagree with the proposition that a person must prove that he or she is not "legally" entitled to receive payment to negate the second prong of subsection (d). This interpretation is inconsistent with the plain language of the

statute. The modifier "legally" is not found in the text of subsection (d). Indeed, a straightforward reading of subsection (d) leads to the conclusion that the adverb "ordinarily" modifies both the verb "received" and the verb phrase "be entitled to receive." *See, e.g., Osterberg v. Peca,* 12 S.W.3d 31, 38–39 (Tex.2000) (holding that modifier "knowingly" refers to two verb phrases separated by the disjunctive); *Tovar v. State,* 978 S.W.2d 584, 587 (Tex.Crim.App.1998) (en banc) (determining that adverb "knowingly" modifies three predicate verbs connected by the conjunction "or"); *Long v. United States,* 199 F.2d 717, 719 (4th Cir.1952) (stating as a rule of grammatical construction that "[t]he use of the adverb 'forcibly' before the first of the string of verbs, with the disjunctive construction used only between the last two of them, shows quite plainly that the adverb is to be interpreted as modifying them all"), *quoted in United States v. Arrington,* 309 F.3d 40, 48 n. 14 (D.C.Cir.2002).

Proof that Dr. McIntyre is not legally entitled to remuneration under any conceivable circumstance or theory is unnecessary. As the dissent in the court of appeals correctly observed, the court of appeals' definition would significantly alter, rather than clarify, the language and the common sense meaning of subsection (b)(1).[3] 59 S.W.3d at 830 (Patterson, J.,

---

2. Subsection (d) purports to apply to both subsections (b)(1) and (c)(1). We are aware that the effect of applying subsection (d) to (b)(1), and applying (b)(1)'s remuneration test to the entire section, effectively makes (d)'s reference to subsection (c)(1) redundant. However, to not apply (b)(1) to the entire section would be at odds with its express language. For this reason and the others set forth herein, this is the only reasonable reading consistent with the language and the purpose of the statute.

3. Since the court of appeals' decision in this case, the Legislature has amended the Good Samaritan statute. The revised version, which takes effect September 1, 2003, amends subsection (b)(1) to state: "This section does not apply to care administered ... for or in expectation of remuneration, provided that being legally entitled to receive remuneration for the emergency care rendered shall not determine whether or not the care was administered for or in anticipation of remuneration...." Act of June 2, 2003, 78th Leg., R.S., H.B. 4, § 10.01 (to be codified at TEX. CIV. PRAC. & REM.CODE § 74.151(b)(1)),

dissenting). Thus, reading subsection (d) to require that the person seeking protection of the statute prove that he would neither ordinarily receive nor ordinarily be entitled to receive remuneration comports with the plain and ordinary meaning of the words of subsection (d) and ensures that this section is consistent with subsection (b)(1).

### C. Legislative History

The legislative history of the statute supports this interpretation of subsection (d). The Legislature added subsection (d) to the statute in 1993. Before 1993, the Good Samaritan defense was not available to persons who regularly administered care in a hospital emergency room. The statute at that time read:

(a) A person who in good faith administers emergency care at the scene of an emergency or in a hospital is not liable in civil damages for an act performed during the emergency unless the act is wilfully or wantonly negligent.

(b) This section does not apply to care administered:

(1) for or in expectation of remuneration;

(2) by a person who was at the scene of the emergency because he or a person he represents as an agent was soliciting business or seeking to perform a service for remuneration;

(3) by a person who regularly administers care in a hospital emergency room; or

(4) by an admitting physician or a treating physician associated by the admitting physician of the patient bringing a health-care liability claim.

Act of September 1, 1985, 69th Leg., R.S., ch. 959, 1985 Tex. Gen. Laws 3242, 3299, *amended by* Act of May 22, 1993, 73d Leg., R.S., ch. 960, § 1, 1993 Tex. Gen. Laws 4193, 4194.

In 1993, the Legislature expanded the scope of the statute primarily to enable emergency room personnel, who respond to medical emergencies when they are not obligated to do so, to claim the benefit of this affirmative defense. *See* TEX. CIV. PRAC. & REM.CODE § 74.001(a), (c)(1); *see also* SENATE COMM. ON JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 386, 73d Leg., R.S. (1993) (stating that the purpose of the amendment is to remove a "person who regularly administers care in a hospital emergency room from the list of exceptions" in the statute). The Legislature amended subsection (a) and added subsection (c)(1), which protect from liability emergency room personnel who respond to emergencies occurring outside a hospital, or emergencies occurring in a hospital when they are at the scene of the emergency for reasons unrelated to their work in administering health care. TEX. CIV. PRAC. & REM.CODE § 74.001(a), (c)(1).

The Legislature also added subsection (d), which ensures that emergency room personnel (acting under the circumstances of subsection (c)(1)), or anyone else who might ordinarily receive or be entitled to receive payment as contemplated by subsection (b)(1), could not waive or elect not to charge their fee to obtain the protection of the statute. *Id.* § 74.001(d). The legislative history indicates that the explanatory language contained in subsection (d) was added to ensure that emergency room personnel, who became eligible for protection under the 1993 amendments, could not circumvent the purpose of the statute to protect only persons who respond to emer-

*available at* http://www.capi-tol.state.tx.us/tlo/78R/billtext/HB00004f.HTM.

gencies absent a pre-existing obligation or legal duty.

Ramirez argues that the legislative history shows that the Legislature never intended for an obstetrician delivering a baby in a hospital to be exempt from liability. Ramirez cites a House report on Senate Bill 386, which states that the purpose of the bill is to create an incentive for physicians who are hesitant to administer emergency care to a person injured "along a road," and "not to give ... physicians a way of avoiding liability when they are negligent in providing care in a hospital." *See* HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. S.B. 386, 73d Leg., R.S. (1993). But this legislative history does not support her argument. On the contrary, had the Legislature intended to except from the statute all doctors who provide care in hospitals, it could have said so without carving out the specific exceptions for certain doctors or medical personnel. Before 1993, the statute clearly contemplated that a non-treating, non-emergency-room doctor who responded to an emergency in a hospital could claim the Good Samaritan defense. *See, e.g., Hernandez v. Lukefahr,* 879 S.W.2d 137, 140–41 (Tex. App.-Houston [14th Dist.] 1994, no writ) (determining that a pediatrician who responded to an emergency situation in a hospital was covered under the pre–1993 version of the statute). Nothing in the legislative history suggests that subsection (d) was added to exclude doctors who were entitled to Good Samaritan immunity before the 1993 amendments.

## D. Consequences of this Construction

Finally, we believe that the consequences of Ramirez's interpretation of subsection (d) would undermine the purpose of the statute. The effect of such a decision would be to place physicians who act as Good Samaritans in the impracticable position of having to disprove every possible legal theory by which they might be "legally entitled" to compensation for emergency care. Ramirez's approach would have the exception swallow the rule. Contrary to the statute's purpose, there would be little if any incentive for doctors to render emergency care if they could be entitled to remuneration under some "unarticulated legal theory." *See* 59 S.W.3d at 831 (Patterson, J., dissenting).

Ramirez contends that the court of appeals' opinion does not frustrate public policy for three reasons. First, she observes that the applicable standard of care for a physician responding to an emergency already takes into account the emergency circumstances. Second, she asserts that hospitals already have incentives to provide emergency care by requiring staff doctors to agree to respond to emergency pages. Third, she notes that the record contains no evidence that Dr. McIntyre responded to the emergency page because he knew that he would be sheltered from liability. These arguments challenge the policies behind the enactment of the Good Samaritan statute. Our role here, however, is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent.

## IV. Application to the Facts of this Case

■■■ We turn to the summary judgment evidence to determine whether Dr. McIntyre conclusively proved that he did not act for or in expectation of remuneration. A defendant moving for summary judgment on an affirmative defense has the burden to establish conclusively that defense. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). Dr.

McIntyre's summary judgment evidence consists of his affidavit and deposition testimony. In his affidavit, Dr. McIntyre stated the following:

> I did not charge the patient for my services nor did I render my services in expectation of compensation. This was not a situation for which I would ever charge. I do not specialize nor am I routinely assigned to an emergency room. I am not on an emergency response team and was not on call for the hospital, Dr. Gunter or her group on the date of this incident.

In his deposition, Dr. McIntyre testified that he did not bill Ramirez, that he did not think he was ethically allowed to bill Ramirez, and that he was not familiar with anyone in Travis County who would send a bill when they provided emergency care under the circumstances of this case. To prove facts through an interested witness, the testimony must be uncontroverted, clear, positive, direct, credible, free from contradiction, and susceptible to being readily controverted. Tex.R. Civ. P. 166a(c). Ramirez did not object to either the affidavit or the deposition testimony. Consequently, Dr. McIntyre's uncontroverted testimony established that he would neither ordinarily charge nor ordinarily be entitled to charge for his services under the circumstances of this case.

Ramirez's evidence does not raise a question of fact on whether Dr. McIntyre ordinarily would be entitled to receive a fee for his services under the circumstances of this case. First, she cites Dr. McIntyre's testimony that he makes his living practicing obstetrical medicine, that he routinely delivers babies in the labor and delivery unit at St. David's Medical Center and receives payment for those services, and that he was treating his own obstetrical patient, from whom he expected to be compensated for his services, in the labor and delivery unit on the day that he delivered Colby Ramirez. While this testimony may preclude Dr. McIntyre from claiming exemption from liability for negligence based on emergency care of his own patient, the relevant inquiry under the statute is whether he would be entitled to "remuneration for administering care *under such circumstances to the patient in question*." Tex. Civ. Prac. & Rem.Code § 74.001(d) (emphasis added). The testimony cited by Ramirez is not probative of the circumstances of this case, which involved a medical emergency and an absence of any pre-existing relationship or duty to respond to that emergency.

■ Ramirez also contends that the trial court erred in striking her expert affidavit, which she claims controverts Dr. McIntyre's testimony. In response to the summary judgment motion, Ramirez proffered the affidavit of Dr. Stuart Edelberg, a board-certified obstetrician from Maryland, who stated that Dr. McIntyre "was entitled to bill and receive a fee for the delivery of baby Colby Ramirez." The trial court struck Dr. Edelberg's affidavit, stating that as a Maryland doctor, he was not "qualified" to testify about "what's ordinarily billed or what the law ordinarily allows people to recover for their medical services in the State of Texas." We review a trial court's exclusion of expert testimony for an abuse of discretion. *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex.2000) (per curiam) (citing *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 718–19 (Tex.1998)).

■ While Dr. Edelberg purported to have personal knowledge of the facts recited in his affidavit, his statement regarding Dr. McIntyre's entitlement to bill is a legal conclusion with no supporting facts or rationale. A conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judg-

ment. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996) (per curiam) ("The relevant standard for an expert's affidavit opposing a motion for summary judgment is whether it presents some probative evidence of the facts at issue.... Conclusory affidavits are not enough to raise fact issues.") (citations omitted). The trial court did not abuse its discretion in striking Dr. Edelberg's affidavit.

## V. Conclusion

Because we conclude that Dr. McIntyre's summary judgment evidence conclusively established that he did not act for or in expectation of remuneration within the meaning of section 74.001(b)(1) and (d), we reverse the judgment of the court of appeals. The court of appeals did not consider Ramirez's second issue on appeal regarding whether Dr. McIntyre fell within the exception of subsection (c)(1). As the parties have not sought review of that issue, we remand this case to the court of appeals. *See* TEX.R.APP. P. 53.4.