The CITY OF HOUSTON, Petitioner,

v.

Robert JACKSON, Respondent.

No. 04–0465.

Supreme Court of Texas.

Argued Oct. 20, 2005.

Decided April 7, 2006.

Rehearing Denied June 30, 2006.

Timothy J. Higley, Constance K. Acosta, City of Houston Legal Dept., Arturo G. Michel, City Attorney, Anthony W. Hall Jr., Asst. City Attorney, David W. Holman, Godwin Pappas Langley Ronquillo, LLP, Houston, for the City of Houston.

Fred A. Keys Jr., Harris County Deputies' Organization, Joan M. Lucci Bain, Bain & Bain, P.L.L.C., Houston, for Robert Jackson.

Rance L. Craft, Office of the Attorney General, Austin, for the State of Texas.

Justice O'NEILL delivered the opinion of the Court.

Section 143.134(h) of the Texas Local Government Code imposes a $1,000 penalty payable to an aggrieved fire fighter for each day a department head intentionally fails to implement a decision of the Fire Fighters' and Police Officers' Civil Service Commission (the "Commission") under Section 143.131 or a decision of a hearing examiner under Section 143.129 that has become final. TEX. LOC. GOV'T CODE § 143.134(h). The court of appeals held that the penalty provision also applies to a grievance examiner's unappealed recommendation under Section 143.130 of the Code. 135 S.W.3d 891. We hold that, by the provision's plain language, it does not. Accordingly, we reverse the court of appeals' judgment and dismiss Jackson's statutory penalty claim for want of jurisdiction.

## I. Background

In May 1996, Robert Jackson, an Engineer Operator with the City of Houston Fire Department, requested a voluntary transfer to Fire Station 70. When his request was denied, Jackson initiated a grievance pursuant to Subchapter G of Chapter 143 of the Local Government Code. *See* TEX. LOC. GOV'T CODE §§ 143.127–35.[1] That subchapter establishes a four-step process for resolving complaints of aggrieved fire fighters and police officers employed by municipalities with a population of 1.5 million or more. Proceedings under that process increase in formality as the grievance advances from Step I to Step IV, when a final and binding decision is made by an independent hearing examiner or the Commission. *See id.* When Jackson's transfer was denied under the proposed solutions presented at Steps I and II of the grievance process, he elected to pursue his Step III appeal before a Commission-appointed grievance examiner rather than an independent third party hearing examiner, a choice the Code expressly afforded him. *See id.* § 143.129(d).

After an informal hearing, the grievance examiner recommended Jackson receive a transfer to any station, other than Station 70, that had an opening on November 21, 1996, the date of the recommendation. The grievance examiner noted that it was Jackson's responsibility to apply for his choice of transfer. Neither Jackson nor the Fire Chief appealed the grievance examiner's recommendation to the Commission; consequently, the recommendation was deemed accepted by the parties. *See id.* § 143.130(e).

1. Chapter 143 of the Local Government Code applies only to those municipalities that have: (1)(a) a population of 10,000 or more; (b) a paid fire department and police department; and (c) voted to adopt Chapter 143 or the law codified by Chapter 143; or (2) elected to adopt Chapter 143 and whose acts subsequent to that election were validated by the law enacted by House Bill 822, Acts of the 73rd Legislature, R.S., 1993. TEX. LOC. GOV'T CODE § 143.002. The grievance process provided for in Subchapter G applies only to a municipality with a population of 1.5 million or more. TEX. LOC. GOV'T CODE § 143.101(a).

At the time of the recommendation, Jackson occupied a "roving" position in the department, meaning he was assigned to a particular station but was often sent to others when the need arose. The only stations with openings on the date of the recommendation were 11B, 21B, and 82B. Although Jackson had a standing application to Station 11B when the grievance examiner's recommendation issued, Jackson was not awarded that transfer, purportedly because the fire department's district chief believed the grievance examiner's decision required Jackson to submit a new, written transfer request, which he did not do. In April 1998, Jackson was transferred from his "roving" position to Station 48D as a result of an agreement with the Fire Chief. After this transfer, he continued to submit, and often withdraw, applications to transfer stations, including various transfer requests in August and September of 1998. These requests were not granted, primarily because they were for stations other than those three that had openings available on the date of the recommendation.

On September 18, 1998, Jackson filed a second grievance, complaining that the original recommendation had never been implemented. The assistant fire chief disposed of this second grievance by informing Jackson that he could not "rule on a grievance that supposedly has been decided by a grievance examiner." Jackson did not appeal the assistant fire chief's decision by filing a Step II grievance form.

Two months later, Jackson sued the City of Houston and Lester Tyra, as Fire Chief of the Houston Fire Department, alleging the City's failure to implement the grievance examiner's 1996 recommendation violated Section 143.134(h) of the Local Government Code and seeking declaratory and mandamus relief. Jackson sought $798,000 in statutory penalties and interest as a result of the City's alleged violation of Section 143.134(h), as well as costs and attorney's fees.

The City filed a plea to the jurisdiction, alleging Jackson had failed to exhaust his administrative remedies because the penalty provision applies only to decisions of the Commission under Section 143.131 or the decisions of independent hearing examiners under Section 143.129, whereas Jackson chose to pursue his grievance before a grievance examiner under Section 143.130. The trial court denied the City's jurisdictional plea, and the court of appeals affirmed. *City of Houston v. Jackson*, 42 S.W.3d 316 (Tex.App.—Houston [14th Dist.] 2001, pet. dism'd w.o.j.) (*"Jackson I"*). The appeals court concluded that an unappealed grievance examiner's recommendation under Section 143.130 constituted a final decision of the Commission under Section 143.131 for purposes of invoking the statutory penalty provision; thus Jackson had exhausted his administrative remedies and properly invoked the trial court's jurisdiction. *Id.* at 322–23.

The case proceeded to trial, and the jury found that the Fire Chief had intentionally failed to implement Jackson's transfer request from November 21, 1996 to April 7, 1998. Based on the jury's findings, the trial court rendered judgment on the jury's verdict in Jackson's favor, and awarded $477,000 in statutory penalties, attorney's fees, post-judgment interest, and other expenses. Both the City and Jackson appealed, the City challenging the trial court's judgment on a number of grounds, including lack of jurisdiction, and Jackson contesting the period for which the trial court awarded the statutory penalty. The court of appeals affirmed the trial court's judgment in all respects. 135 S.W.3d at 894 (*"Jackson II"*). Jackson did not seek review of the court of appeals'

decision. We granted the City's petition for review to consider Section 143.134(h)'s application and related issues.

## II. Analysis

### A. Overview of the Grievance Process

Chapter 143 of the Local Government Code establishes the four-step grievance process that governs this case. *See* Tex. Loc. Gov't Code §§ 143.127–35. The Code covers a broad range of grievances:

> The fire fighter or police officer may file a grievance that relates to the same aspects of the person's employment over which the civil service commission for the employees of the municipality who are not subject to this chapter would have lawful jurisdiction, including but not limited to a written or oral reprimand, transfers, job performance reviews, and job assignments.

*Id.* § 143.127(a).[2] To initiate a grievance, the fire fighter must file a Step I grievance form with the department head or departmental grievance counselor. *Id.* § 143.128(a). Thereafter, the departmental grievance counselor schedules a Step I meeting with the fire fighter, the fire fighter's immediate supervisor or other appropriate supervisor, or both, and the person against whom the grievance is lodged. *Id.* § 143.128(b). The Step I procedure attempts to resolve the complaint informally and encourages the supervisor to "openly discuss the grievance with the fire fighter or police officer in a sincere attempt to resolve it." *Id.* § 143.128(c). The fire fighter's supervisor must provide an evaluation and proposed recommendation for solution of the Step I grievance. *Id.* § 143.128(d). If the proposed solution is not acceptable, the fire fighter may file a Step II grievance form within fifteen cal-

endar days after receiving the supervisor's proposed Step I solution. *Id.* § 143.129(a). If the fire fighter fails to timely file a Step II grievance form, the Step I solution is considered accepted. *Id.* § 143.128(e).

The Step II proceeding requires a meeting of all Step I participants, as well as the department head or the department head's representative. *Id.* § 143.129(b). The department head or representative is required to provide a proposed recommendation for solution to the fire fighter. *Id.* § 143.129(c). If the proposed solution is not acceptable, the fire fighter has the option to appeal along one of two tracks. The fire fighter may: (1) "submit a written request stating the person's decision to appeal to an independent third party hearing examiner pursuant to the provisions of Section 143.057," or (2) "file a Step III grievance form with the director in accordance with Section 143.130," in which event the Commission appoints a grievance examiner to oversee the appeal. *Id.* §§ 143.129(d), 143.132(a). The difference between these two tracks is significant, with each having perceived advantages and disadvantages that we will later describe.

An independent third party hearing examiner has the same duties and powers as the Commission, including the right to issue subpoenas, and issues a decision that is "final and binding on all parties." *See id.* §§ 143.057(c), 143.057(f). Although the Code governs the hearing conducted by an independent third party hearing examiner, a fire fighter who opts for this alternative in effect removes the grievance outside the influence of the Commission and its appointees.

The other choice afforded a fire fighter is to appeal the Step II proposed solution to a Commission-appointed grievance ex-

---

**2.** Section 143.127(a)(1)-(2) excepts certain types of grievances, including allegations of discrimination, from the purview of Chapter 143's grievance procedure.

aminer, who will conduct a hearing with all Step II participants and each person specifically named in the grievance. *Id.* § 143.130(c). This Step III proceeding is "conducted as an informal administrative procedure." *Id.* Similar to the requirements in Steps I and II, the grievance examiner presents written findings and a recommendation for solution. *Id.* § 143.130(d). If the proposed solution is not acceptable to the fire fighter or the department head, either may file a Step IV grievance form. *Id.* § 143.130(e). Under the Step IV proceeding, the Commission reviews the grievance examiner's findings and recommendation and considers the transcript of the Step III hearing before rendering a decision. *Id.* § 143.131(b). The Commission decision is final and binding on the parties. *Id.* § 143.131(c).

With this overview of the Chapter 143 grievance process and Jackson's chosen journey through it, we must next address a preliminary error-preservation argument that Jackson has raised.

## B. Preservation

■ As a threshold matter, Jackson contends the City failed to preserve error on the issue of Section 143.134(h)'s construction because the City's challenge to the trial court's jurisdiction on identical grounds was rejected in *Jackson I,* 42 S.W.3d at 322–23, and this Court dismissed the City's interlocutory appeal for want of jurisdiction. In *Jackson I,* the Fourteenth District Court of Appeals held that a grievance examiner's unappealed recommendation under Section 143.130 was in effect a final decision of the Commission under Section 143.131; therefore, Jackson had exhausted his administrative remedies and the trial court had jurisdiction over his statutory penalty claim. *Id.* at 322. In *Jackson II,* the First District Court of Appeals determined that the *Jackson I*

decision was not clearly erroneous and declined to reconsider that court's construction of Section 143.134(h). 135 S.W.3d at 897. In this appeal, Jackson again contends the City has failed to demonstrate that the *Jackson I* court's construction of Section 143.134(h) was clearly erroneous, and argues that the court of appeals here did not abuse its discretion by following that decision. Consequently, Jackson claims, the court of appeals properly applied the "law of the case" doctrine and we should not disturb its decision. We disagree.

■ The "law of the case" doctrine provides that a decision of a court of last resort on a question of law will govern a case throughout its subsequent stages. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986). The *Jackson II* court correctly noted that a conclusion reached by an intermediate appellate court does not bar reconsideration of the initial conclusion in a subsequent appeal, and the decision to revisit the conclusion is left to the discretion of the court under the particular circumstances of each case. 135 S.W.3d at 896 (citing *Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex.2003)). But the "law of the case" doctrine in no way prevents this Court from considering legal questions that are properly before us for the first time. We are not bound by the *Jackson I* court's construction of Section 143.134(h), since the City's interlocutory petition for review to this Court was properly dismissed and the City's challenge to the court of appeals' construction of Section 143.134(h) is now before us for the first time. *Cf. Trevino v. Turcotte,* 564 S.W.2d 682, 685 (Tex.1978) (holding that a court of appeals' conclusion was not binding under the "law of the case" doctrine when the petitioner's first writ of error was denied by this Court "writ refused, no reversible error").

We now turn to the Section 143.134(h) penalty provision and the parties' arguments.

### C. Section 143.134(h)

Section 143.134(h) of the Local Government Code provides as follows:

> If *the decision of the commission* under Section 143.131 or *the decision of a hearing examiner* under Section 143.129 that has become final is favorable to a fire fighter, the department head shall implement the relief granted to the fire fighter not later than the 10th day after the date on which the decision was issued. . If the department head intentionally fails to implement the relief within the 10–day period, the municipality shall pay the fire fighter $1,000 for each day after the 10–day period that the decision is not yet implemented.

*Id.* § 143.134(h) (emphasis added).

■■■ Our primary objective when construing a statute is to ascertain and give effect to the Legislature's intent. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex.2003). In discerning that intent, we begin with the " 'plain and common meaning of the statute's words.' " *Id.* (quoting *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002)). When the statutory language is unambiguous, we must apply the statute as written. *See RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985). Moreover, we have consistently held that penal statutes should be strictly construed. *See, e.g., Brown v. De La Cruz*, 156 S.W.3d 560, 565 (Tex.2004). We have similarly construed statutes waiving sovereign and governmental immunity. *See, e.g., Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex.2003); *see also* Tex. Gov't Code § 311.034 ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."). With these standards in mind, we begin by examining the text of Section 143.134(h).

■■■ The City argues that Section 143.134(h), by its plain terms, does not extend to a grievance examiner's recommendation under Section 143.130. At no time, the City contends, did the grievance examiner's recommendation concerning Jackson's Step II appeal ever become a final Commission decision under Section 143.131, or a decision by an independent hearing examiner under Section 143.129, as the penalty provision unambiguously requires. Had the Legislature intended the statutory penalty to apply to mere recommendations, the City argues, it could have easily included them in the statutory language with unmistakable clarity. Since it did not, the City maintains, this Court must apply the provision as written.

Jackson responds with a plain-language argument of his own, claiming that the reference in Section 143.134(h) to decisions by a "hearing examiner under Section 143.129" encompasses recommendations proposed by both grievance examiners and independent hearing examiners. Jackson notes that neither type of examiner is appointed under Section 143.129. Rather, independent third party hearing examiners and grievance examiners are authorized under Sections 143.057 and 143.130, respectively.[3] Thus, Jackson contends, the

---

**3.** We note that hearing examiners are also authorized in Subchapter G under Section 143.1016, which applies only to municipalities with a population of 1.5 million or more. However, our analysis remains unaffected since Section 143.057 applies with equal force to large municipalities. Tex. Loc. Gov't Code § 143.101(b) (noting that the entirety of Chapter 143 applies to municipalities with a population of 1.5 million or more unless otherwise provided).

penalty provision's reference to a "hearing examiner under Section 143.129" extends to both types of decisionmakers, since it is that section that provides fire fighters the option to choose one or the other when appealing a Step II proposed solution. According to Jackson, had the Legislature intended the reference to "hearing examiners under Section 143.129" to apply solely to independent hearing examiners, which are appointed under Section 143.057, the Legislature would have logically referenced that section instead of Section 143.129 to avoid any ambiguity in the penalty provision's application.

We believe the statutory grievance procedure's language and structure contradict Jackson's argument and support the City's interpretation of the penalty provision. As we have said, the Code provides a fire fighter like Jackson the choice of appealing a Step II proposed solution to a grievance examiner or an independent third party hearing examiner. *See* TEX. LOC. GOV'T CODE § 143.129(d). There are significant consequences associated with that choice, and each track has perceived advantages and disadvantages. For example, a grievance examiner's Step III recommendation for solution is subject to further appeal to the Commission, absent which it is deemed accepted by the parties. *Id.* §§ 143.130(e), 143.131(a)-(c). A fire fighter who appeals to the Commission and is not satisfied with its decision may file a petition in district court to set aside the Commission's decision and proceed by trial de novo. *Id.* § 143.015(a)-(b). In contrast, an independent hearing examiner's decision is "final and binding on all parties," *id.* § 143.057(c), and any further review of the decision through an appeal to the district court is severely circumscribed. *See id.* § 143.057(j) ("A district court may hear an appeal of a hearing examiner's award only on the grounds that the arbitration panel was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means.").

Not only do the two tracks invoke different procedures for appeal, there are different potential costs to the fire fighter depending upon the track chosen. There are no costs to the fire fighter who chooses to present his appeal to a grievance examiner, other than the costs of the fire fighter's representation, *id.* § 143.134(a), while expenses associated with an independent third party hearing examiner are allocated between the parties after the final decision according to who prevails. *Id.* § 143.129(d).

Finally, the method of selecting the examiner varies significantly between the two tracks. An independent hearing examiner is selected upon mutual agreement of the parties; if no agreement can be reached, the parties must methodically whittle down a list of qualified neutral arbitrators by alternately striking names until a single arbitrator remains to conduct the hearing. *See id.* § 143.057(d). This mutual participatory process is in contrast to the Commission's unilateral appointment of a grievance examiner. *See id.* §§ 143.130(b), 143.132. In sum, the Code contains substantive distinctions between grievance examiners and independent third party hearing examiners, and those distinctions must inform our construction of the statutory penalty provision. We simply cannot presume, as Jackson urges us to do, that Section 143.134(h)'s reference to the decision of a "hearing examiner" was intended to gloss over this distinction and sweep the recommendations of grievance examiners into the statutory penalty provision.

Instead, we find the text of the penalty provision sufficiently precise to conclude that the Legislature did not intend to in-

clude grievance examiner recommendations within the provision's purview. In addition to the precise reference to a "hearing examiner," the penalty provision also specifically references "the decision" of the Commission and "the decision" of the hearing examiner. *Id.* § 143.134(h). Under the Code's plain language, it is the Commission and independent hearing examiners who produce "decisions," while grievance examiners are only authorized to provide "recommendations for solution." *Id.* § 143.130(d). We presume that the Legislature knew the difference between the two when crafting the penalty provision and intended it to apply only to final decisionmakers.

Although Jackson claims the Legislature intended to make the alternatives of appeal equal under Section 143.129(d), we believe the statutory language compels the opposite conclusion. Jackson's interpretation contravenes the plain language of Section 143.134(h) and would allow for the penalty to attach to recommendations resulting from informal, intermediate hearings midway through the grievance procedure. We find no support in the statutory language that the Legislature intended Section 143.134(h) to include appealable solutions and recommendations like those a grievance examiner is authorized to provide under Section 143.130.

Jackson alternatively claims that, because the grievance examiner's recommendation was not appealed, it became in effect a decision of the Commission for purposes of invoking the penalty provision. Jackson contends the crucial element in applying the penalty provision is not the entity issuing the decision, but whether or not the recommendation or decision is final. Because the grievance examiner is the duly appointed representative of the Commission, Jackson argues, the grievance examiner's recommendation

becomes the final decision of the Commission by operation of Section 143.131(a) when no party appeals. *See* Tex. Loc. Gov't Code § 143.131(a) ("[A] department head ... [who] rejects the solution [of the grievance examiner] under Section 143.130, ... must complete a step IV grievance form and file it ... within 15 calendar days ...."). Such an interpretation, according to Jackson, is the only one that furthers the Legislature's intent to discourage fire departments from failing to timely comply with solutions they have apparently accepted. If the City disagreed with the grievance examiner's recommendation, Jackson maintains, it should have appealed to the Commission to vindicate its position. According to Jackson, the City should not be allowed to refuse to implement a recommendation it accepted and simultaneously avoid the penalty provision. Jackson further asserts that the penalty provision must apply to unappealed grievance examiner recommendations since the provision applies to a decision "that has become final." *Id.* § 143.134(h) (referring to "the decision of a hearing examiner under Section 143.129 *that has become final* ....") (emphasis added). Because decisions by the Commission and independent hearing examiners are automatically final, the argument goes, the phrase "has become final" would be rendered surplusage unless it refers to grievance examiner recommendations that become final decisions of the Commission when the department head chooses not to appeal further.

Again, we disagree, and decline Jackson's invitation to judicially rewrite Section 143.134(h). A grievance examiner's recommendation does not "become" a final "decision" of the Commission when no one appeals; rather, Section 143.130 specifically provides that the solution is deemed "accepted" by the parties:

If the proposed solution is not acceptable to either the fire fighter or police officer or the department head, either party may file a step IV grievance form with the director in accordance with Section 143.131. If *the fire fighter* or police officer *or the department head* fails to timely file a step IV grievance form, *the solution is considered accepted by that person.*

*Id.* § 143.130(e) (emphasis added). The specific parties who are considered to have accepted the solution are the grievant and the department head, not the Commission. *Id.* Moreover, the Code does not equate deemed "acceptance" with decisionmaking. The Commission's decisionmaking process is described in Section 143.131 and is invoked when the grievant or department head timely files a Step IV grievance form contesting the Step III recommendation, something neither side chose to do in this case. *Id.* § 143.131(a). The decisionmaking process involves a Commission review of the grievance examiner's findings and recommendations, consideration of the transcript and evidence accepted at the Step III hearing, and issuance of a written decision that must be provided to the grievant, the department head, and the grievance examiner. *Id.* § 143.131(b)-(c). Only then is the Commission's decision considered final. *Id.* § 143.131(c).

 Jackson's argument that an unappealed grievance examiner's recommendation is akin to a final decision of the Commission not only lacks support in the statutory language, but taken to its logical conclusion would allow the $1,000 daily penalty to attach to the failed implementation of any unappealed recommendation even if the recommendation was proposed by the fire fighter's immediate supervisor or department head at Step I or Step II in the grievance process, respectively. *See* TEX. LOC.

GOV'T CODE §§ 143.128(d), 143.129(c). We see nothing that would indicate the Legislature intended to abrogate municipalities' governmental immunity in such a haphazard manner. To discover such an intent in this case, in direct opposition to the statutory language, would run afoul of long-held statutory construction principles that compel strict construction of penal statutes and statutes waiving sovereign and governmental immunity. *See De La Cruz*, 156 S.W.3d at 565; *see also Wichita Falls State Hosp.*, 106 S.W.3d at 696.

Jackson cites the testimony of Alice Perrenot, division manager for the Human Resources Department, as evidence that the Commission approved the recommendation of the grievance examiner. Whatever the import of her testimony might be, however, there is no statutory basis for such an assertion. And even assuming the Commission's policy is to review grievance examiners' recommendations, such a review does not constitute a "decision of the commission" as required by Section 143.134(h). As we have explained, it is undisputed that there was no Step IV appeal in Jackson's grievance that would have necessitated a "decision of the commission" and triggered the penalty provision. *See* TEX. LOC. GOV'T CODE § 143.131.

Finally, Jackson protests that interpreting Section 143.134(h) as we have leaves fire fighters without the means to induce compliance with favorable recommendations made in the grievance process. But we believe the statutory language indicates the Legislature's deliberate choice not to subject governmental entities to stiff statutory penalties absent a final decision made under the process that the Code allows, a process that the Legislature afforded fire fighters considerable opportunity to direct. Jackson's position would require this Court to effectively insert language into

Section 143.134(h) that the Legislature itself did not include. We decline to second-guess the Legislature's policy choice by adding language to an unambiguous statute.

## III. Conclusion

We conclude that the grievance examiner's recommendation concerning Jackson's grievance was not a sanctionable decision under Section 143.134(h); therefore, the trial court lacked jurisdiction over Jackson's statutory penalty claim. Accordingly, we reverse the court of appeals' judgment and dismiss Jackson's statutory penalty claim for want of jurisdiction.