# NO. 12-12-00159-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *NOVAMED SURGERY CENTER OF TYLER, L.P., NOVAMED OF TEXAS, INC., D/B/A NOVAMED EYECARE OF TEXAS, INC., AND SURGERY PARTNERS, L.L.C., APPELLANTS* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THOMAS BOCHOW, M.D. AND C. JEFFREY PENNELL, M.D., APPELLEES* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Novamed Surgery Center of Tyler, L.P., Novamed of Texas, Inc., d/b/a Novamed Eyecare of Texas, Inc., and Surgery Partners, L.L.C. (collectively Novamed) appeal the trial court's order granting summary judgment in favor of Appellees Thomas Bochow, M.D., and Jeffrey Pennell, M.D. Novamed raises three issues on appeal. We affirm.

## BACKGROUND

In 2002, Bochow and Pennell (the Physicians) entered into a limited partnership agreement with Novamed in an ambulatory surgery center (ASC). The agreement clearly was with physicians since it included several references to "Physician Partners." As part of the agreement, the parties agreed to a noncompetition covenant. However, the parties failed to include a "buyout provision" as part of that covenant.

Several years later, after deciding to open a new ASC in Tyler, the Physicians brought a declaratory judgment suit against Novamed. By their lawsuit, the Physicians sought a declaration that the noncompetition covenant in the agreement was unenforceable against them.

They based their claim on several theories, including that they are physicians licensed to practice medicine by the Texas State Board of Medical Examiners and the noncompetition covenant does not contain a buyout provision in compliance with Texas Business and Commerce Code, Section 15.50(b)(2).

After Novamed filed its answer to the suit, the Physicians filed a motion for summary judgment in which they argued, among other things, that the noncompetition covenant in the contract is unenforceable because it fails to comply with Texas law. In response, Novamed conceded that Bochow and Pennell are physicians and the noncompetition covenant does not contain a buyout provision. However, it contended that the covenant is enforceable because it does not affect the Physicians' ability to practice medicine. Moreover, Novamed argued that Section 15.50(b) was never meant to address noncompetition covenants involving ASCs and that a latent ambiguity exists in the statute and conceals the legislature's true intent. Ultimately, the trial court found the noncompetition covenant unenforceable because of the absence of a buyout provision and granted the Physicians' motion for summary judgment. This appeal followed.

## CONSTRUCTION OF SECTION 15.50 OF THE 2001 STATUTE

In their three issues, Novamed argues that the trial court erred in granting the Physicians' motion for summary judgment. Specifically, Novamed contends that the 2001 version of Texas Business and Commerce Code, Section 15.50(b)(2)[1] does not render the noncompetition covenant unenforceable because (1) the covenant does not affect the Physicians' practice of medicine, (2) it relates solely to an interest in a separate business venture, the ASC, and (3) applying the statute as written leads to absurd and nonsensical results. Thus, we review the 2001 statute to determine whether it requires a buyout provision in a noncompetition covenant involving physicians' business interests in an ASC.

---

[1] Texas Business and Commerce Code, Section 15.50 was most recently amended in 2009. With that amendment, the legislature noted that the statute "applies only to a covenant entered into on or after the effective date of this Act." TEX. BUS. & COM. CODE ANN. § 15.50 (West 2011) [Act of June 19, 2009, 81st Leg., R.S., ch. 971, § 2, 2009 Tex. Gen. Laws 2565]. It further noted that a "covenant entered into before [September 1, 2009] is governed by the law in effect at the time the covenant was entered into, and that law is continued in effect for that purpose." *Id.* As Novamed concedes, the 2001 statute applies because the agreement between the Physicians and Novamed was executed in 2002.

## Standard of Review

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Once the movant has established a right to summary judgment, the burden of proof shifts to the nonmovant to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

We review a trial court's grant of a summary judgment de novo. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). We examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c).

## Governing Law

Statutory construction is a question of law and is reviewed de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). In construing a statute, our primary objective is to determine and give effect to the legislature's intent in enacting it. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). In determining legislative intent, we examine the entire act, not just isolated portions of it. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). We start with the plain and common meaning of the statute's words. *McIntyre*, 109 S.W.3d at 745. If a statute is clear and unambiguous, we determine the legislature's intent from the language of the statute itself. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 442 (Tex. 2009). "Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006).

We must presume that every word of the statute has been used for a purpose and that every word excluded from the statute has been excluded for a purpose. *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995). We should not insert words into the statute except to give effect to clear legislative intent. *Id*. "Statutory language should not be read as

pointless if it is reasonably susceptible of another construction." ***Franka v. Velasquez***, 332 S.W.3d 367, 393 (Tex. 2011).

We do not apply the plain language of a statute when doing so would produce absurd results. ***Entergy***, 282 S.W.3d at 437. A latent ambiguity occurs when a statute that is unambiguous on its face is applied to a certain situation and an ambiguity appears by reason of some collateral matter. *See **Nat'l Union Fire Ins. v. CBI Indus., Inc.***, 907 S.W.2d 517, 520 (Tex. 1995) (defining latent ambiguity in a contract). In construing a statute, we may consider, among other matters, the object sought to be attained, the circumstances under which the statute was enacted, the legislative history, the common law or former statutory provisions, including laws on the same or similar subjects, and the caption. *See* TEX. GOV'T CODE ANN. § 311.023 (West 2013). We do not consider lawmakers' post-hoc statements as to what a statute means. ***Entergy***, 282 S.W.3d at 443–44.

## Construing the 2001 Statute

The 2001 version of Section 15.50 states, in pertinent part, as follows:

Criteria for Enforceability of Covenants Not to Compete

(b) A covenant not to compete is enforceable against a person licensed as a physician by the Texas State Board of Medical Examiners if such covenant complies with the following requirements:

. . . .

(2) the covenant must provide for a buy out of the covenant by the physician at a reasonable price or, at the option of either party, as determined by a mutually agreed upon arbitrator or, in the case of an inability to agree, an arbitrator of the court whose decision shall be binding on the parties . . . .[2]

The 2001 statute unambiguously requires a buyout provision for a noncompetition covenant involving a licensed physician to be enforceable. *Id*.; ***Greenville Surgery Center, Ltd. v. Beebe***, 320 S.W.3d 850, 853 (Tex. App.–Dallas 2010, no pet.). Because Bochow and Pennell are licensed physicians and because the noncompetition covenant in their agreement with Novamed does not include a buyout provision, the trial court found the noncompetition clause unenforceable.

---

[2] *See* Act of Sept. 1, 1999, 76th Leg., R.S., ch. 1574, § 1, 1999 Tex. Gen. Laws 5408–09, *amended by* Act of Sept. 1, 2001, 77th Leg., R.S., ch. 1420, § 14.729, 2001 Tex. Gen. Laws 4210, 4514–15 (amended 2009) (current version at TEX. BUS. & COM. CODE ANN. §15.50 (West 2011)).

Novamed argues that the statute contains a latent ambiguity. Specifically, it contends that collateral matters including (1) the legislative history, (2) the reading of the entire statute, (3) the 2009 amendments or "clarifications" to the statute by the legislature, and (4) the mandate to avoid an absurd result work in concert to demonstrate that the legislature intended the buyout requirement to apply only if the covenant served as a restriction on the physicians' practice of medicine.

Novamed is correct that, according to the legislative history for the 2009 statute, the purpose of the buyout clause requirement is "to allow a departing physician to provide his or her patients with continued care."[3] Additionally, in our examination of the 2001 statute, we note that the title is "Criteria for Enforceability of Covenants Not to Compete."[4] In the 2001 statute, Section 15.50(a) deals globally with covenants not to compete. *Id*. Further, in the 2001 statute, Section 15.50(b) is limited to covenants involving physicians and, under subsections (1) and (3), identifies conditions that specifically apply to a physicians' relationship to a patient. *Id*. However, former Section 15.50(b)(2) contains no reference to "patients." *Id*.

In 2009, the legislature amended Section 15.50(b), restricting it to covenants not to compete "relating to the practice of medicine." *See* TEX. BUS. & COM. CODE ANN. § 15.50(b). The legislature also added subsection (c), which states, "Subsection (b) does not apply to a physician's business ownership interest in a licensed hospital or licensed ambulatory surgical center." *Id*. § 15.50(c). Novamed characterizes these changes as "clarifications" of the previous statute. Finally, Novamed argues that requiring a buyout provision in every noncompetition covenant involving a physician leads to an absurd result. Thus, Novamed contends that because of all of these collateral matters outside the language of the 2001 statute, we should not apply the statute's literal meaning. Instead, Novamed urges we should find a latent ambiguity and restrict the 2001 version of Section 15.50(b) to those noncompetition clauses that seek to restrict a physician's practice of medicine. We disagree.

In an uncommon instance of a Texas court's finding a latent ambiguity, one of our sister courts examined clear and unambiguous language regarding potential liability of a municipality to a firefighter. *See **City of Houston v. Jackson***, 42 S.W.3d 316, 318–19 (Tex. App.–Houston

---

[3] House Comm. on State Affairs, Bill Analysis, Tex. H.B. 3623, 81st Leg., R.S. (2009).

[4] *See* Act of Sept. 1, 1999, 76th Leg., R.S., ch. 1574, § 1, 1999 Tex. Gen. Laws 5408–09, *amended by* Act of Sept. 1, 2001, 77th Leg., R.S., ch. 1420, § 14.729, 2001 Tex. Gen. Laws 4210, 4514–15 (amended 2009).

[14th Dist.] 2001, pet. dism'd w.o.j.), *abrogated by* **City of Houston v. Jackson**, 192 S.W.3d 764 (Tex. 2006). In **Jackson**, the statute provided potential relief if a decision by a hearing officer was made pursuant to either of two statutes of the local government code, but no relief if the decision was made pursuant to the statute upon which Jackson relied. *See id*. The appellate court concluded that the legislature could not have intended the result that would follow from the statute's plain meaning and held that Jackson's suit could continue. *See id.* at 322–23. Jackson subsequently obtained a judgment against the City of Houston, and that judgment was appealed to the Supreme Court of Texas. *See* **City of Houston v. Jackson**, 192 S.W.3d 764, 766 (Tex. 2006). The supreme court made no mention of a latent ambiguity, but instead, applied the statute according to its plain meaning. *Id*. at 772. Because the 2001 statute is also unambiguous, we follow the supreme court's example in **Jackson** and apply the statute according to its plain meaning.

Moreover, the noncompetition covenant in this case relates to the medical field. The parties entered into a partnership to run an ASC. Novamed was aware that it was entering into an agreement with two physicians. Thus, if it wanted the noncompetition covenant to be enforceable, it should have complied with the then-current version of Section 15.50 by including a buyout provision. Novamed has not cited to any legislative history for any version of the statute prior to the 2009 amendment that indicates the statute did not apply to an ASC. And with regard to Novamed's arguments pertaining to the legislative history of the 2009 statute, we do not consider lawmakers' post-hoc statements as to what a statute means. *Entergy*, 282 S.W.3d at 443–44. Further still, we disagree with Novamed's assertion that the 2009 amendment was simply a "clarification." Before the amendment, a noncompetition covenant involving a physician's ownership interest in an ASC required a buyout provision. *See* **Beebe**, 320 S.W.3d at 853. Following the amendment, it did not. *See* TEX. BUS. & COM. CODE ANN. § 15.50. This is more than a "clarification." It is a change in the law.

Finally, we cannot conclude that the legislature's requiring a buyout provision in order to enforce a noncompetition covenant against a physician as it relates to an ASC leads to an absurd result. The legislature is free to provide physicians with this added safeguard just as it may choose not to provide such a protection. The determination of the best course of action between these competing policy considerations is a purely legislative matter. *Entergy*, 282 S.W.3d at 444.

6

In sum, we agree with the trial court that the noncompetition covenant in this case fails to comply with the plain language of the 2001 statute.  *See **Beebe***, 320 S.W.3d at 853.  Thus, we conclude that the noncompetition covenant is unenforceable against the Physicians.  Therefore, we hold that the trial court properly granted their motion for summary judgment.  Novamed's first, second, and third issues are overruled.

## DISPOSITION

Having overruled Novamed's first, second, and third issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered June 12, 2013.
*Panel consisted of Worthen, C.J., Griffith, and Hoyle, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 12, 2013**

**NO. 12-12-00159-CV**

**NOVAMED SURGERY CENTER OF TYLER, L.P., NOVAMED OF TEXAS, INC., D/B/A NOVAMED EYECARE OF TEXAS, INC. AND SURGERY PARTNERS, L.L.C.,**
Appellants
V.
**THOMAS BOCHOW, M.D. AND
C. JEFFREY PENNELL, M.D.**,
Appellees

Appeal from the 114th Judicial District Court
of Smith County, Texas. (Tr.Ct.No.11-2185-C/B)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellants, **NOVAMED SURGERY CENTER OF TYLER, L.P., NOVAMED OF TEXAS, INC., D/B/A NOVAMED EYECARE OF TEXAS, INC. AND SURGERY PARTNERS, L.L.C.,** for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

8