

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00068-CV

_____



IN THE INTEREST OF C.G.L. AND A.C.L., MINOR CHILDREN



On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 10-0714-A



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Wesley Hampton filed an intervention in the divorce pending between his daughter, Lacie Lachney, and her husband, Michael Lachney. The object of Hampton's intervention was to obtain court-ordered possession of or access to the two children of the marriage, C.G.L. and A.C.L., boys who were aged about eight and nine years old. Upon receiving a final adverse ruling, Hampton has appealed to this Court. We affirm the order of the trial court.[1]

## I.      Procedural Background

Hampton's petition in intervention claimed that it would be "in the best interest of the children that [Hampton] be granted possession of or access to the children with the right to possession at the times and under the conditions that are determined to be in the best interest of the children." Hampton also alleged that "[d]enial of possession or access . . . to the children would significantly impair the physical health or emotional well-being of the children." Hampton's son-in-law, Michael, filed a motion to strike Hampton's intervention wherein he pointed out that Hampton had failed to file an affidavit mandated by Section 153.432(c) of the Texas Family Code,[2] and asked the trial court to strike the petition in intervention. Alternatively, Michael's motion asked the court to sever the issue of Hampton's requested grandparental possession or access rights from the divorce suit. Shortly after Michael's motion was filed,

---

[1]Strictly speaking, the trial court's order from which Hampton appeals (as it was worded) simply struck Hampton's petition in intervention. However, based on the conduct of the parties during and subsequent to the hearing on this matter and on the content of the trial court's findings of fact and conclusions of law, it appears that the trial court treated the hearing that was held as one on the merits of Hampton's claim and not his failure to follow the procedure necessary to allow him access to the courts on his petition for possession or visitation.

[2]This affidavit must set out the knowledge or belief of the affiant (along with supporting facts) that denial of the requested possession or access would significantly impair the physical health or emotional well-being of the children.

2

Hampton's intervention was severed from the divorce action and docketed as a separate lawsuit, this apparently being by agreement of the parties. About seven months after the severance occurred, a hearing was held on Hampton's application for possession or access.

At the beginning of the hearing in the trial court, there was discussion among the trial court, the attorneys for Hampton and Michael, and the amicus attorney regarding the nature of the hearing to be held. While the attorneys for Hampton and Michael both indicated that they believed the purpose of the hearing was to litigate the merits of Hampton's claim for possession or access, the amicus attorney voiced the belief that they were present solely to argue the sufficiency of Hampton's motion to intervene (which now was the operative pleading in the separately-docketed suit) to permit the trial court to entertain its action. The trial court stated, "[W]e will proceed with the hearing on the standing issue . . . ."

During the ensuing hearing, the evidence Hampton introduced seemed to restrict itself to proof of the elements Hampton believed that he needed to satisfy the requirements of Section 153.433(a)(2) of the Texas Family Code (which requires the grandparent seeking possession of or access to children to overcome the presumption "that a parent acts in the best interest of the parent's child[ren] by proving . . . that denial of possession of or access to the child[ren] would significantly impair the child[ren]'s physical health or emotional well-being . . . ." TEX. FAM. CODE ANN. § 153.433(a)(2) (West Supp. 2013)). The trial court then heard arguments about standing as well as the propriety of granting Hampton's requested possession or access.

We note that the trial court made no oral pronouncement of its ruling on the relief sought by Hampton at the conclusion of the evidentiary hearing. The order that was entered April 11,

3

2013, in this matter did not purport to deal with the merits of Hampton's claim but, rather, disposed of the matter by striking Hampton's petition in intervention. This order was superseded by a nunc pro tunc order of virtually identical content dated May 21, 2013, both of which seem to primarily address adherence to the requirement set out in Section 152.432(c) of the Texas Family Code as a prerequisite to avoid having his suit dismissed.[3] *See* TEX. FAM. CODE ANN. § 152.432(c) (West Supp. 2013). The wording of the order entered by the trial court did not purport to address the merits of Hampton's claim but, rather, seemed solely to address the issue of the validity of the plea in intervention.

The trial court entered findings of fact and conclusions of law at Hampton's request dated June 12, 2013, the content of which appeared to contrast with the thrust of the earlier order. These not only summarized the procedural history of the matter (pointing out that Hampton had failed to meet the affidavit requirement of Section 152.432(c) of the Texas Family Code, which is the predicate to a grandparent being entitled to relief), they also failed to provide proof of the evidentiary requirements of Section 153.433 of the Texas Family Code, which requirements were necessary if the trial court were to grant Hampton's request for possession of or access to the grandsons. *See* TEX. FAM. CODE ANN. § 153.433 (West Supp. 2013).

By the exploration of the merits of Hampton's claim at the hearing that was conducted, the issue of standing was rendered moot. Hampton's petition in intervention sought only possession of or access to his grandsons; he made no request for any kind of conservatorship.

---

[3]The body of the order in the nunc pro tunc order was identical to that in the original order. If the original order had not been superseded by the nunc pro tunc order, Hampton's request for the entry of findings of fact and conclusions of law (filed May 24, 2013) would not have been filed in a timely manner.

4

The sole means by which a grandparent can obtain standing to seek such relief is to follow the requirements of Section 153.432 of the Texas Family Code (expressly allowing grandparents to request possession of or access to a grandchild by filing an original suit or a suit for modification). "Not surprisingly, Texas courts consistently have held that a grandparent's standing to request access is conferred by section 153.432 . . . ." *In re Smith*, 260 S.W.3d 568, 573 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). "Section 153.432 of the family code [sic] does give grandparents standing to petition the court for access to or possession of a child." *In re H.M.J.H.*, 209 S.W.3d 320, 322 (Tex. App.—Dallas 2006, no pet.); *see also* TEX. FAM. CODE ANN. § 102.004(c) (West 2008) ("Possession of or access to a child by a grandparent is governed by the standards established by Chapter 153.").

Because Hampton only sought possession of or access to his grandchildren, he had standing to pursue such relief. As it is worded, the trial court's order striking Hampton's intervention seems inappropriate because the striking of an intervention would be proper where the intervenor has failed to show a justiciable interest in the pending suit. *See In re Union Carbide Corp.*, 273 S.W.3d 152, 154 (Tex. 2008) (orig. proceeding) (per curiam).[4] Hampton had a justiciable interest in the Lachney divorce because it was a case that involved his natural grandchildren. Even though he chose to file an intervention, he could just as well have sought possession or access independently. His ability to bring an action seeking possession or access is completely different, though, from his ability to meet the statutory requirements that entitle him

---

[4]Having a justiciable interest requires the intervenor's interest to "'be such that if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought' in the original suit." *Union Carbide*, 273 S.W.3d at 155 (quoting *King v. Olds*, 12 S.W. 65, 65 (Tex. 1888)).

to the actual relief (or even to a hearing on the matter). Accordingly, the order purportedly striking the petition in intervention may have had the effect that the trial court sought (i.e., denial of the requested relief), but it does not appear to completely and correctly fit the situation giving rise to its entry.[5] However, based on the conduct of the parties, it looks more likely that Michael, Hampton, and the trial court were all treating the order actually entered (by whatever name or whatever form) as a denial of Hampton's request for possession or access. In other words, we treat the trial court's order as deciding the merits of Hampton's request for possession of or access to his grandsons.[6]

## II.     Hampton's Request for Possession or Access:  The Merits

A grandparent seeking possession of or access to a grandchild must meet several requirements to be entitled to possession or access:

---

[5]We render no opinion as to whether the trial court's order striking Hampton's intervention was correct or appropriate in the circumstances. It could be that the trial court struck the intervention after finding Hampton failed to show that the appointment of parent Michael as the sole managing conservator would significantly impair the children's physical health or emotional development, as required in Section 102.004(b) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 102.004(b) (West 2008). The trial court expressly made this conclusion of law. Because only Section 102.004(b) speaks of a grandparent intervening in an existing suit and all of Hampton's requested relief was governed by Section 153.432 and 153.433 of the Texas Family Code, it could be said that an intervention was not necessary. *See* TEX. FAM. CODE ANN. §§ 153.432–.433 (West Supp. 2013). All of this is academic, though, as we feel confident the issue actually being presented to us is whether the trial court properly denied Hampton's request for possession of or access to his grandchildren.

[6]We find this is appropriate based on our review of the record. At the hearing, counsel for both Hampton and Michael said they thought they were in court for a final hearing. More significantly, after the trial court entered its order striking the intervention, Hampton requested findings of fact and conclusions of law. The trial court's findings and conclusions entered in response explicitly detailed the requirements of Sections 153.432 and 153.433, pointing out each failure of Hampton's evidence that pertained to those requirements. Nothing in the record indicates that Hampton was surprised by the actions of the court or believed that he had been deprived of his ability to present his case-in-chief for the relief he sought. In Hampton's brief, he first states his appellate point of error is that the trial court abused its discretion in denying his suit for possession or access; later he says his point of error is that the trial court abused its discretion in striking the petition in intervention. However, the tenor of his briefing, argument, and authority all are geared towards his position that the best interests of the grandchildren would be served by granting him possession or access.

1.    at least one of the child's biological or adoptive parent's rights have not been terminated;

2.    the grandparent must present evidence to overcome "the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and"

3.    the grandparent is a parent of a parent of the child, and that parent

    (a)    has been incarcerated in jail or prison for 3 months before filing of petition;
    (b)    has been found incompetent;
    (c)    is dead; or
    (d)    has neither actual nor court-ordered access to the child.

*See* TEX. FAM. CODE ANN. § 153.433(a)(2). We review a trial court's decision regarding the grant or denial of a grandparent's request for access or possession for an abuse of discretion. *In re Chambless*, 257 S.W.3d 698, 699 (Tex. 2008) (orig. proceeding) (per curiam). In family law cases, the abuse of discretion standard of review overlaps with traditional sufficiency standards of review. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.); *In re Matter of Marriage of Hale*, 975 S.W.2d 694, 697 (Tex. App.—Texarkana 1998, no pet.); *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.). As a result, legal and factual insufficiency are not independent grounds of reversible error, but instead are factors relevant to our assessment of whether the trial court abused its discretion. *A.B.P.*, 291 S.W.3d at 95; *Scoggins v. Trevino*, 200 S.W.3d 832, 836 (Tex. App.—Corpus Christi 2006, no pet.); *Doyle*, 955 S.W.2d at 479. To determine whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and whether

7

it erred in its exercise of that discretion. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied).

Hampton argues that the best interests of the children (which "shall always be the primary consideration of the court in determining the issues of . . . possession of and access to the child[ren]") would be best served by granting him possession of or access to his grandsons. *See* TEX. FAM. CODE ANN. § 153.002 (West 2008). He not only must prove that denial of possession/access would significantly impair the children's physical or emotional well-being, he must also satisfy the other requisites of Section 153.433 in order to prevail.[7] A trial court abuses its discretion when it grants access to a grandparent who has not met this standard. *In re M.T.C.*, 299 S.W.3d 474, 481 (Tex. App.—Texarkana 2009, no pet.) (citing *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (per curiam)).

## III.    Evidence Before the Court

Hampton testified that until he intervened in the divorce action, he had lived within a half block of the children and their parents, he often took them to school, and he got along well with Michael and Michael's girlfriend (to whom Michael eventually was married). He said that the boys would occasionally come to his house in the middle of the night because they wanted to stay with him. He acknowledged that his daughter, Lacie, was subject to a drug abuse problem.[8]

---

[7]We must read the statute as a whole and not just isolated portions. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) (citing *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)). If the statutory language is unambiguous, we must interpret it according to its terms, giving meaning to the language consistent with other provisions in the statute. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). We also consider the objective the law seeks to obtain and the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023(1), (5) (West 2013); *see also McIntyre*, 109 S.W.3d at 745.

Hampton said that Michael and his current wife began to prevent his access to the grandsons, an action that precipitated his filing of the petition for intervention. His oral request was to be granted a right to visit his grandchildren one weekend per month.

Hampton eventually supplied his own affidavit, which partially satisfied the requirements of Section 153.432 of the Texas Family Code.[9] The affidavit asserted that the boys lived with their mother after their parents separated in January 2010 and that Hampton had supplied "most of their financial support." Hampton said he "supervised [his] daughter's visits with the boys and provided support and school expenses as needed. [He] also supervised [Michael's] girlfriend's children." The affidavit concluded,

> "I have seen and communicated with my grandsons as often as I am allowed to do so by their father. They are very close to me and to their grandmother Terrie Cawood, who has also shared possession and provided support for them.
> Denial of possession of or access to [C.G.L.] and [A.C.L.] by WESLEY HAMPTON would significantly impair the children's physical health or emotional well-being."

The affidavit contained the required allegation that denial of possession of or access to the grandchildren by Hampton would significantly impair the boys' physical health or emotional well-being. The fact that this information was contained in the affidavit did not eliminate Hampton's need to present evidence at the hearing to support that allegation. Further, although

_____

[8]The divorce decree required Lacie's visitations to occur "through the Getting Together Safely Program." This indicates that it was necessary for the mother's visitation to be supervised. In addition, the divorce decree allowed Michael to request specifed random drug testing on Lacie and for a suspension of Lacie's visitation rights should she test positive for the presence of illicit drugs.

[9]A grandparent suing for access to or possession of a child "must execute and attach an affidavit on knowledge or belief that contains, along with supporting facts, the allegation that denial of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being. The court shall deny the relief sought and dismiss the suit unless the court determines that the facts stated in the affidavit, if true, would be sufficient to support the relief authorized under Section 153.433." TEX. FAM. CODE ANN. § 153.432.

Section 153.432(c) requires the affidavit to contain statements which (if true) would establish the foundation for relief under Section 153.433, the affidavit is silent in that regard.

For example, there is nothing in the affidavit stating that Lacie (Hampton's daughter and mother of the children at issue) (a) had been incarcerated for three months before the filing of Hampton's suit, (b) had been found incompetent, (c) was dead, or (4) did not have actual or court-ordered possession of or access to the children.[10] *See* TEX. FAM. CODE ANN. § 153.433(a)(3).

The only other witness at the hearing was Michael, who acknowledged being on felony community supervision for some unidentified offense. Michael testified that he was concerned because the boys would go to the bathroom in their pants after they had been around Hampton. He described an occasion where Hampton commented on the physical appearance of the eight-year-old daughter of Michael's then-fiancé. According to Michael, Hampton "made a laughing comment that she is already having boobs," apparently in the presence of or directly to the young girl. Michael did not feel comfortable allowing Hampton to be around the boys based on these things and other "red flags," such as the fact that Lacie had some unspecified arrest warrants out for her. Even though the boys' counselor had indicated that the boys were doing fine and had not indicated a preference that the boys not be exposed to Hampton, Michael believed that having the boys around Hampton might lead to problems with the boys' mother, Hampton's daughter.

---

[10]Lacie was named possessory conservator in the divorce decree.

10

Michael went on to complain of what he described as Hampton's practice of showing up unannounced at Michael's home and at Michael's current wife's work place asking to see the boys. Michael said he did not think it was in the boys' best interest to have a relationship with Hampton at this time. Although he expressed a belief that the trial court's refusal to grant Hampton visitation or access rights would not be harmful to the boys, Michael did not rule out future contact with Hampton; rather, Michael wanted the ability to make that decision on his own. There was testimony that the boys had not seen Hampton in the eight-month period prior to the hearing, and Michael said that in the "past four, five, six months they really don't ask" about Hampton.

## IV.    Trial Court Ruling

In its findings of fact and conclusions of law, the trial court made a specific conclusion of law that Hampton "failed to present sufficient evidence to overcome the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being," citing Section 153.433(a)(2) of the Texas Family Code. The findings of fact observed that no evidence was provided that Lacie (1) had been incarcerated for three months before Hampton filed his suit, (2) had been found incompetent, (3) was dead, or (4) was denied actual or court-ordered access to the children. The trial court made conclusions of law on these specific points. Even though the text of the trial court's ruling would seem to be the type that would have denied Hampton the right to a hearing on his request, the record supports the trial court's ruling denying the core of Hampton's request on the merits

11

of his claim: to be granted court-ordered possession of or access to the children. The effect of the ruling was implicit—that Hampton failed to satisfy the statutory requisites of Section 153.433. Accordingly, Hampton was not entitled to possession of or access to the children.

We affirm the trial court's rulings.


Bailey C. Moseley
Justice

Date Submitted:     February 12, 2014
Date Decided:       March 6, 2014