# IN THE SUPREME COURT OF TEXAS

═══════════
NO. 16-0748
═══════════

CITY OF LAREDO, TEXAS, PETITIONER,

V.

LAREDO MERCHANTS ASSOCIATION, RESPONDENT

═══════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
═══════════════════════════════════

JUSTICE GUZMAN, joined by JUSTICE LEHRMANN, concurring.

As judges, our role "is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent."[1] The critical inquiry here is whether the Legislature, through clear and unmistakable language, expressed its intent to preempt local regulation,[2] and it has.[3] Our duty is to enforce the statute as we find it,[4] so we have. The compelling public policy arguments

---

[1] *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003).

[2] *BCCA Appeal Grp., Inc. v. City of Hous.*, 496 S.W.3d 1, 7-8 (Tex. 2016).

[3] *See* TEX. HEALTH & SAFETY CODE § 361.0961(a)(1) ("A local government or other political subdivision may not adopt an ordinance, rule, or regulation to prohibit or restrict, for solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law.").

[4] *In re Corral-Lerma*, 451 S.W.3d 385, 387 (Tex. 2014) (orig. proceeding).

advanced by both sides of the debate are acutely legislative concerns and, as such, are constitutionally removed from judicial purview.[5]

Even so, these complex public policy determinations have important ramifications for the environmental legacy the next generation will inherit. And allowing plastic debris—bags, Styrofoam cups, water bottles, and similar pollutants—to migrate unchecked into the environment carries grave consequences that must not be ignored. Though I join the Court's opinion, I write separately to highlight the urgency of the matter. As a society, we are at the point where complacency has become complicity.

Plastic is a miracle material with many beneficial purposes, but the speed at which plastic refuse is proliferating is taxing our waste-management capacities.[6] Improperly discarded plastics have become a scourge on the environment and an economic drain. And due to their buoyancy and propensity for wind-blown incursion, single-use plastic bags—the target of the Laredo ordinance—are a particularly pernicious form of this non-biodegradable menace. The transitory usefulness of these disposable containers comes at a genuine cost—they clog our landfills, impede

---

[5] TEX. CONST. art. II, § 1 (establishing three branches of state government and mandating separation of their powers); *cf. Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 665-66 (1994) (plurality opinion) ("As an institution, . . . Congress is far better equipped than the judiciary to amass and evaluate the vast amounts of data bearing upon an issue as complex and dynamic as that presented here." (internal quotation marks omitted)); *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 513 (1982) (when "relevant policy considerations do not invariably point in one direction, and there is vehement disagreement over the validity of the assumptions underlying many of them[, t]he very difficulty of these policy considerations, and Congress' superior institutional competence to pursue this debate, suggest that legislative not judicial solutions are preferable").

[6] Laura Parker, *We Made Plastics. We Depend on It. Now We're Drowning in It*, NAT'L GEOGRAPHIC (June 2018), https://www.nationalgeographic.com/magazine/2018/06/plastic-planet-waste-pollution-trash-crisis/ (observing that "virtually half of the plastic ever manufactured has been made in the past 15 years" and "roughly 40 percent of the now more than 448 million tons of plastic produced every year is disposable, much of it used as packaging intended to be discarded within minutes after purchase").

our recycling efforts, kill domestic animals and wildlife (in excruciating ways), hamper flood control efforts, sully our seas, and stain our vistas. As the amicus briefs vividly relate, these so-called urban tumbleweeds are a blight and a nuisance, creating public eyesores,[7] harming the ecology and our economic industries,[8] and imposing significant costs on taxpayers and municipalities for litter abatement.[9] The optimal solution to the problem of single-use plastics may be unsettled, but the adverse impact of leaving the matter wholly unaddressed is undeniable.

For one thing, animals are known to eat plastics, to devastating effect. Recent news reports about the disturbing death of a pilot whale recounted that the whale, who washed ashore the coast of Thailand earlier this month, had 80 pieces of plastic trash weighing 17 pounds in its stomach and vomited 5 plastic bags before perishing.[10] This tragic incident is sadly emblematic of an increasingly lethal pandemic.[11]

---

[7] *See, e.g.*, Amicus Curiae Brief of Rio Grande International Study Center, Ex. A, *Retail Bag Tally 2008 v. 2017* (describing significant reduction of plastic bags in a vacant lot following enactment of Laredo's ordinance—145 vs. 10).

[8] *See, e.g.*, Amicus Curiae Brief of the Hon. Jose Aliseda (cattle ranching); Amicus Curiae Brief of Texas Cotton Ginners' Ass'n & Billy Joe Easter (cotton and cattle industries); Amicus Curiae Brief of Texas Black Bass Unlimited, Edward Parten, Shane Cantrell, Joey Farah, Scott Hickman, J.T. Van Zandt, & Robert Webb (fishing industry, including tourism, recreation, and commercial activities); Amicus Curiae Brief of Texas Campaign for the Environment (recycling and composting industries); Amicus Curiae Brief of Turtle Island Restoration Network (marine-life conservationists).

[9] *See* Burns & McDonnell, *The Cost of Litter & Illegal Dumping in Texas: A Study of Nine Cities Across Texas* (Feb. 2017), http://www.texansforcleanwater.org/uploads/1/0/9/3/10936519/cost_of_litter_and_illegal__dumping_final.pdf (documenting the enormous costs associated with littering and illegal dumping in nine Texas cities).

[10] *Dead whale found in Thailand with 17 pounds of plastic in its stomach*, NBCNEWS.COM, June 3, 2018, https://www.nbcnews.com/news/world/dead-whale-found-thailand-17-pounds-plastic-its-stomach-n879581; Travis Fedschun, *Whale dies in Thailand after eating more than 80 plastic bags*, FOXNEWS.COM, June 3, 2018, http://www.foxnews.com/science/2018/06/04/whale-dies-in-thailand-after-eating-more-than-80-plastic-bags.html.

[11] *See, e.g.*, Elaina Zachos, *How a Seal Pup Died With a Plastic Wrapper in Its Stomach*, NAT'L GEOGRAPHIC (May 31, 2018), https://news.nationalgeographic.com/2018/05/seal-plastic-death-climate-change-animals (observing that plastic pollution is so pervasive that "even the smartest marine animals are falling prey to the deadly epidemic"); Elaina Zachos, *How This Whale Got Nearly 20 Pounds of Plastic in Its Stomach*, NAT'L GEOGRAPHIC (June 4, 2018),

Texas ranchers, fishermen, and aquatic conservationists have witnessed first-hand the deleterious effects of single-use plastic bags on livestock, turtles, fish, birds, and other indigenous wildlife, who often become ensnared in plastic refuse and frequently mistake it for food. The consequences are horrific, and pending affirmative legislative action, many amici have weighed in to champion local efforts to combat the growing problem of single-use plastics.[12] As they say, quite irrefutably, preserving the well-being of livestock and wildlife is a biological imperative that is also vitally important to Texas industries, tourism, and recreational activities that fuel our state and local economies. Our state is a natural wonder with a staggering array of geological features unmatched by any other territory in the union—a majestic beauty that sets the backdrop for and is the mainstay of many of our industries.

The Texas fishing industry, for example, is an economic powerhouse that creates thousands of jobs and involves millions of commercial and recreational participants, billions of dollars in retail sales, and at least a billion dollars in salaries and wages.[13] Amici point out the various ways

---

http://www.nationalgeographic.com.au/animals/how-this-whale-got-nearly-20-pounds-of-plastic-in-its-stomach.aspx (chronicling the effects of plastic pollution in the world's oceans); *The Problem of Marine Plastic Pollution*, CLEAN WATER ACTION, https://www.cleanwater.org/problem-marine-plastic-pollution (last accessed June 20, 2018) ("Marine plastic pollution has [caused] fatalities as a result of ingestion, starvation, suffocation, infection, drowning, and entanglement."); *see also* Parker, *supra* note 6 ("[O]cean plastic is estimated to kill millions of marine animals every year. Nearly 700 species, including endangered ones, are known to have been affected by it.").

[12] *See supra* note 8; *see also* Amicus Brief of the City of Galveston; Amicus Brief of the City of Hous.; Amicus Brief of Envtl. Tex., Natural Grocers, & Bicycle Support Shop; Amicus Brief of Tex. Clean Water, Inc.; Amicus Brief of Tex. Mun. League & Laredo Merchs. Ass'n; Amicus Brief of Gerry Willis; Amicus Brief of Sen. Judith Zaffirini.

[13] *See* Southwick Assocs., *The 2011 Economic Benefits of Sportfishing in Texas*, at iv, 5-10 (prepared for Tex. Parks & Wildlife Dep't) (Nov. 12, 2013), http://www.southwickassociates.com/wp-content/uploads/downloads/2013/11/Texas-Economic-Impacts-of-Sportfishing-2013-11-12.pdf.; U.S. Fish & Wildlife Serv., *2011 Nat'l Survey of Fishing, Hunting & Wildlife-Associated Recreation—Tex.*, at 4-5 (rev. Jan. 2014), https://www.census.gov/prod/2013pubs/fhw11-tx.pdf.

plastic-bag debris harms the fishing industry in significant ways—causing damage to boats from bags sucked into the engines, injuring fish and other sea life who ingest or become entangled in plastic rubbish, impairing navigation, and diminishing the recreational experience for wildlife tourists, among other things.[14]

Texas cattle ranchers are also alarmed about plastic-bag litter migrating into pastures and the danger—and economic consequences—of cattle consuming this refuse.[15] As ruminate animals, cows are particularly susceptible to impaction from nondigestable foreign bodies, which creates a host of adverse physical consequences, including death.[16] One amici described the cost-benefit analysis ranchers must undertake when plastic consumption by livestock is suspected:

> If a cattle rancher has reason to know that a cattle ingested a plastic bag[,] the rancher has three options: send the animal to slaughter earlier than planned to salvage some value from the animal, call a vet for examination and possible surgery, or wait to see what happens and maybe administer a laxative treatment. The economics of cattle ranching go against paying a veterinarian to examine and possibly perform surgery to remove plastic bags thought to be ingested by cattle. ... Spending $500 or more on surgery that may or may not be needed is rarely a viable option for animals that aren't worth much more than the veterinary bill.[17]

---

[14] *See* U.S. Envtl. Prot. Agency, *Trash-Free Waters: Toxicological Threats of Plastic*, https://www.epa.gov/trash-free-waters/toxicological-threats-plastic (accessed June 19, 2018) (plastic debris is directly harmful to the ecosystem through ingestion, entanglement, and alteration and indirectly by contributing to migration of invasive species and carries significant economic impacts to tourism, the fishing industry, and navigation).

[15] *See* Amicus Curiae Brief of Texas Cotton Ginners' Ass'n & Billy Joe Easter at 1, 9-12.

[16] *See* Akraiem A. & Abd Al-Galil, *Rumen Impaction in Cattle Due to Plastic Materials*, 23 J. VET. MED. RES. 65, 66 (Aug. 2016) ("Clinically, rumen impaction with a non-metallic foreign body is characterized by clear signs of emaciation, dehydration, abdominal distension and asymmetry of the abdomen. Affected Animals showed a lack of feces in the rectum, foamy salivation, recumbency and inappetence.").

[17] *See* Amicus Curiae Brief of Texas Cotton Ginners' Association and Billy Joe Easter at 11.

Other agricultural industries, such as cotton farming, ginning, and related enterprises, similarly experience adverse economic consequences from wind-blown plastic refuse. In amicus briefing to this Court, the Texas Cotton Ginners' Association reports that "cotton harvests are increasingly contaminated by plastic carryout bag litter" because "errant plastic bags blowing in the wind frequently get snagged" near the bolls.[18] The bags must be manually removed to prevent contamination, and few cotton farmers have the time or resources for this undertaking.[19] Contamination of cotton bales results in deteriorated cotton quality and "directly influences the cotton's value."[20] Consequently, the Association reports that members of the cotton industry "suffer financially from lower cotton prices due to increasingly contaminated bales."[21]

Taxpayers and municipalities also incur direct fiscal impacts arising from municipal efforts to ameliorate the effects of plastic-bag pollution. Before enacting the bag-ban ordinance, Laredo studied the effects and costs the city incurs from the use of single-use plastic bags, reporting an annual expense of at least $340,000 for plastic-bag remediation. A study of waste-management costs reveals that nine Texas cities representing more than 25% of the state's population—Austin, Corpus Christi, El Paso, Fort Worth, Houston, Laredo, Lufkin, Midland, and San Antonio—incur

---

[18] *Id.* at 1, 6.

[19] *Id.* at 7.

[20] *Id.* at 7-8.

[21] *Id.* at 1.

over $50 million annually for litter and illegal-dumping abatement and enforcement.[22] Plastics of all varieties comprise a significant percentage of visible and micro litter.[23]

Still, it remains debatable whether laws trading one form of plastic bag for another—like Laredo's ordinance—are actually beneficial in the long run[24] and whether any modest impact on litter abatement is outweighed by countervailing concerns, including enhanced risk of food-borne illness from bacteria in reusable grocery bags, environmental consequences from plastic-bag substitutes, and increased economic burdens on consumers and business owners.[25]

As to the requirements imposed by Laredo's bag-ban ordinance, a local merchant testified it is economically infeasible and practically impossible for small businesses to acquire bags that satisfy the ordinance's criteria; moreover, compared to single-use plastic bags, branding the

---

[22] Burns & McDonnell, *supra* note 9, at 1.

[23] *See, e.g.*, Envtl. Res. Planning, LLC, *Don't Mess with Texas: 2013 Texas Litter Survey* (Aug. 23, 2013).

[24] Thicker plastic bags reduce aerodynamics and lessen the propensity for wind-blown contamination, but they take longer to degrade, so when they are not recycled, the burden on landfills is increased. *See* Aaron Waters, *Environmental Effects of the Single Use Bag Ordinance in Austin, Texas*, AUSTIN RES. RECOVERY, at 23 (June 10, 2015), https://www.austintexas.gov/edims/document.cfm?id=232679 ("So, if [the thicker 4 mil] plastic bags are not being recycled at our local facilities, what is their fate? More often than not, they make their way into our landfills, taking even longer to degrade than a traditional single use plastic bag as well as taking more space, both due to their thickness which is mandated by the ordinance.").

[25] *See id.* at 22 ("While most citizen's [sic] find the bag ordinance to be beneficially [sic] to the environment, at least in terms of the reduction of litter, the results do not indicate a clear success. Indeed, the amount of single use plastic bags has been reduced, both in count and by weight. However, in their place, the larger 4 mil bags have replaced them as the go to standard when the reusable bag is left at home. This reusable plastic bag, along with the paper bag, has a very high carbon footprint compared to the single use bag."); *see also, e.g.*, Jonathan Klick & Joshua D. Wright, *Grocery Bag Bans & Foodborne Illness*, U. of Penn., Inst. for Law & Econ. Research Paper No. 13-2 (Jan. 2013), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2196481 (correlating an increase in hospitalization and death from food-borne illness with plastic-bag ban); BAG THE BAN, *Plastic Bags & the Environment*, http://www.bagtheban.com/learn-the-facts/environment (accessed June 19, 2018) ("Ban and tax ordinances have never been successful at meaningfully reducing litter, waste or marine debris . . . . What they have been shown to do is heap unfair costs on low- and fixed-income families and add more red tape to local businesses."); Julian Morris & Brian Seashoes, *How Green is that Grocery Bag Ban?*, Policy Study 437 at 8-9 (June 2014), http://reason.org/files/how_green_bag_ban.pdf (concluding plastic bags make up less than 1% of litter).

ordinance-approved bags as a marketing tool is cost prohibitive, which impacts revenues.[26] The store owner also testified that bags are necessary to prevent shoplifting, but an expectation that customers will bring or purchase reusable bags may not be realistic for border-town businesses that sell souvenirs and other small items and tchotchkes. Bag bans also preclude vendors from using existing stores of single-use plastic bags, resulting in losses that small businesses may not be able to absorb.

Lack of uniform regulation in matters of state-wide importance is also a significant concern. Local plastic-bag ordinances have non-local effects, including regulating non-local businesses, incentivizing the production of alternative materials that may carry their own environmental consequences, and determining the products that will ultimately end up in Texas landfills. At least eleven other Texas cities have adopted regulations limiting the use of plastic bags and authorizing alternatives,[27] but the regulations are not uniform, which can create compliance challenges for non-local businesses. Depending on the locality, handles may or may not be required on bag

---

[26] The witness testified that single-use bags cost around 30 cents per bag with store branding, while higher-weight bags would cost 90 cents to $1.50 without advertising, as small businesses lack the buying power of larger commercial enterprises. The witness described "tremendous difficulty in finding 4 mil bags that would suit the sizes" needed and "extreme difficulty in finding companies that would even make bags the sizes that are the most popular size," but most importantly the expense is "mind boggling."

[27] *See* AUSTIN, TEX., CODE OF ORDINANCES ch. 15-6, art. VII, §§ 15-6-121 to -124; BROWNSVILLE, TEX., CODE OF ORDINANCES ch. 46, art. II, §§ 46-47 to -50; CORPUS CHRISTI, TEX., CODE OF ORDINANCES ch. 22, §§ 22-1, -10; EAGLE PASS, TEX., CODE OF ORDINANCES ch. 16, art. II, div. 5, §§ 16-84 to -90; FORT STOCKTON, TEX., CODE OF ORDINANCES ch. 12, art. I, §§ 12-1, 12-9; FREER, TEX., Ordinance 2012-05 (Dec. 10, 2012); KERMIT, TEX., CODE OF ORDINANCES ch. 98, §§ 98.01–98.10; LAGUNA VISTA, TEX., Ordinance 2012-23 (Sept. 11, 2012); LAREDO, TEX., CODE OF ORDINANCES, ch. 33, art. VIII, §§ 33-501 to -508; PORT ARANSAS, TEX., CODE OF ORDINANCES ch. 10, art. 2, div. 2, §§ 10-26 to -30; S. PADRE ISLAND, TEX., CODE OF ORDINANCES ch. 12, art. III, §§ 12-30 to 30.3; SUNSET VALLEY, TEX., CODE OF ORDINANCES ch. 93, §§ 93-60 to -63.

alternatives,[28] and the percentage of post-consumer recycled material in allowable bags may also

differ.[29] Labeling requirements also vary by locality: reusable bags are acceptable in some cities

only if they visibly display words to the effect that the bags are reusable and recyclable[30] while bags

in others must display the country of origin, manufacturer, and a statement that the bag does not

contain certain toxins.[31] Minimum thickness of acceptable carry-out plastic bags likewise varies by

jurisdiction— 2.25 mil thick in Kermit ; 4 mil thick in Austin, Brownsville, Corpus Christi, Laredo,

and Sunset Valley; and in South Padre Island, any thickness that qualifies as not being "intended and

constructed for single use."[32] And, under at least one ordinance, stores are affirmatively required

to either carry or provide certain types of bags.[33] All these variations come with associated costs of

---

[28] *See* AUSTIN, TEX. CODE OF ORDINANCES ch. 15-6, art. VII, § 15-6-121(3)(b), (d) (requiring bags to have handles except for recyclable paper bags of certain dimensions), EAGLE PASS, TEX. CODE OF ORDINANCES ch. 16, art. II, div. 5, § 16-84(c)(2)(D) (same); SUNSET VALLEY CODE OF ORDINANCES ch. 93, § 93-60 (authorizing use of 4 mil recyclable plastic "with a consumer carry handle").

[29] *Compare* EAGLE PASS, TEX. CODE OF ORDINANCES ch. 16, art. II, div. 5, § 16-84(c)(2)(B) (40%), *with* LAREDO, TEX. CODE OF ORDINANCES, ch. 33, art. VIII, § 33-504 (50%).

[30] *See* AUSTIN, TEX. CODE OF ORDINANCES ch. 15-6, art. VII, § 15-6-121(3)(a); EAGLE PASS, TEX. CODE OF ORDINANCES ch. 16, art. II, div. 5, § 16-84(c)(1); FREER, TEX., Ordinance 2012-05 (Dec. 10, 2012); LAGUNA VISTA, TEX., Ordinance 2012-23 (Sept. 11, 2012); PORT ARANSAS, TEX. CODE OF ORDINANCES ch. 10, art. 2, div. 2, § 10-26; *see also* S. PADRE ISLAND, TEX. CODE OF ORDINANCES ch. 12, art. III, § 12-30 (symbol also allowed as an alternative).

[31] *See* KERMIT, TEX. CODE OF ORDINANCES ch. 98, § 98.01(K)(5).

[32] *Compare* KERMIT, TEX. CODE OF ORDINANCES ch. 98, § 98.01(K)(6), *with* AUSTIN, TEX. CODE OF ORDINANCES ch. 15-6, art. VII, § 15-6-121(3)(c)(ii); BROWNSVILLE, TEX. CODE OF ORDINANCES ch. 46, art. II, § 46-47; CORPUS CHRISTI, TEX. CODE OF ORDINANCES ch. 22, § 22-1; LAREDO, TEX. CODE OF ORDINANCES, ch. 33, art. VIII, § 33-504, SUNSET VALLEY, TEX. CODE OF ORDINANCES ch. 93, § 93-60 (authorizing use of 4 mil recyclable plastic "with a consumer carry handle"), *and* S. PADRE ISLAND, TEX. CODE OF ORDINANCES ch. 12, art. III, § 12-30 (banning only those plastic carry-out bags that are "intended and constructed for single use"); *see* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 736 (10th ed. 2000) ("mil" is "a unit of length equal to 1/1000 inch used esp. in measuring thickness (as of plastic films)").

[33] KERMIT, TEX. CODE OF ORDINANCES ch. 98, §§ 98.03 ("All stores shall provide or make available to a customer only recyclable paper carryout bags or reusable bags for the purpose of carrying away goods or other materials from the point of sale, subject to the terms of this Chapter."); .05(A) ("All stores must provide reusable bags to

production and compliance. A patchwork of disparate local regulations has the practical effect of allowing the most restrictive local ordinance to set the state-wide standard.

As with many issues of regulatory concern, a solution satisfactory to all is no doubt elusive. But the legislative branch, not the judiciary, bears the unenviable task of making complicated policy decisions that balance the benefits of uniform regulation and the myriad burdens (financial or otherwise) that may be imposed on taxpayers, businesses, and the environment. Having expressly reserved the power to make such decisions, the ball is sequestered in the Legislature's court. I urge the Legislature to take direct ameliorative action or, as Section 361.0961(a)(1) contemplates, create a specific exception to preemption of local control. Standing idle in the face of an ongoing assault on our delicate ecosystem will not forestall a day of environmental reckoning—it will invite one.

---

customers, either for sale or at no charge."), .06(C) ("All stores must provide at the point of sale, free of charge, either reusable bags or recyclable paper carryout bags or both, at the store's option.").