**Affirmed and Memorandum Opinion filed May 25, 2023**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00315-CV

### SOLA ENERGY SOURCES, LLC, Appellant

### V.

### SILVERBOW RESOURCES OPERATING, LLC, Appellee

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-14596**

## MEMORANDUM OPINION

Appellee Silverbow Resources Operating, LLC (Silverbow) sued appellant Sola Energy Resources, LLC (Sola) for breach of contract, specific performance, and promissory estoppel based on a written agreement for the purchase of three oil and gas wells located in Louisiana. Silverbow alleged that Sola breached the contract by failing to assume its plugging and abandonment liabilities associated with the wells. Ultimately, the trial court granted Silverbow's traditional motion for summary judgment and awarded attorney's fees. On appeal, Sola brings three issues,

challenging (1) subject matter jurisdiction, (2) the trial court's grant of summary judgment, and (3) the trial court's award of attorney's fees. Concluding that the trial court properly granted summary judgment and awarded attorney's fees, we affirm.

## *Background*

On March 25, 2016, Sola entered into the Purchase and Sale Agreement with Silverbow[1] to purchase Masters Creek Field located in Vernon, Rapides, Avoyelles, Sabine, and Evangeline Parishes in Louisiana. The property acquired by Sola contained wells and facilities that had been shut in or temporarily or permanently shut in or permanently abandoned. Of the property acquired, there are three oil and gas wells that form the basis of this suit: (1) USA 2 #1, API No. 1711520145, (2) USA 11 #1, API No. 1711520146, and (3) Hudson 2 #1, API No. 1711520144; these oil and gas wells were conveyed without express or implied warranty of title.

Pursuant to the terms of the Purchase Agreement, Sola "expressly assume[d] and accept[ed] sole responsibility for and agree[d] to pay all costs and expenses associated with Plugging and Abandonment of all wells and facilities associated with the Properties." Plugging and Abandonment was defined as

> all decommissioning activities and obligations as are required by [l]aws . . . including all plugging, replugging and abandonment; facility dismantlement and removal; pipeline and flowing removal; dismantlement and removal of any and all platforms and other property of any kind related to or associated with operations or activities

---

[1] In the Purchase Agreement, Sola is the "buyer" and Swift Energy Operating, LLC, Swenco-Western, LLC, and GASRS LLC are collectively the "sellers." As part of the Purchase Agreement, Sola was aware and acknowledged that Swift Energy, Swenco, and GASRS were debtors-in-possession under Chapter 11 of the United States Bankruptcy Code proceedings. Swenco-Western and GASRS were direct subsidiary entities of Swift Energy. Swift Energy underwent a bankruptcy and restructuring organizational plan and was later renamed Silverbow on June 30, 2017. GASRS merged into Silverbow on June 16, 2020, and Swenco merged into Silverbow on August 17, 2020. For purposes of this discussion, we will refer to Swift Energy, Swenco, and GASRS collectively as Silverbow.

conducted on the Properties; and site clearance, site restoration and site remediation to the satisfaction required by any Law, lease, or agreement.

On June 28, 2016, the Bureau of Land Management filed a proof of claim against Silverbow in bankruptcy court, asserting that Silverbow had unperformed plugging and abandonment obligations for multiple oil and gas wells (including the three aforementioned wells acquired by Sola). The Bureau of Land Management required Silverbow to plug wells no longer capable of producing and reclaim the surface for each particular operation and estimated that the cost to plug each well would be $300,000.

Silverbow's vice president, chief financial officer, and general counsel attested that Silverbow "communicated multiple times to Sola through Silverbow's business and legal departments, demanding Sola plug and abandon the wells and reclaim the surface." Silverbow also sent formal written notices to Sola in May 2018 through Silverbow's legal department and again through outside counsel on July 30, 2018 and February 5, 2019. Silverbow's demands went unanswered, and Silverbow sued Sola for breach of contract, specific performance, and promissory estoppel.

Sola filed a motion to dismiss Silverbow's claims alleging that the trial court did not have subject matter jurisdiction to decide the case because the oil and gas wells were located in Louisiana. The trial court denied Sola's motion. Subsequently, Silverbow filed a traditional motion for summary judgment on its breach of contract claim seeking damages caused by Sola's breach or specific performance. The trial court granted an interlocutory summary judgment ordering Sola to either (1) plug, abandon, and reclaim the surface areas of wells USA 2 #1, USA 11 #1, and Hudson 2 #1 or pay Silverbow to plug, abandon, and reclaim the surface areas of the wells. Sola then filed a motion for traditional summary judgment on Silverbow's request for attorney's fees, which was granted. Ultimately, the trial court vacated the order

in favor of Sola and signed a final judgment awarding Silverbow attorney's fees. Sola timely filed its notice of appeal.

### *Discussion*

As discussed above, Sola brings three issues on appeal. We first address whether the trial court properly exercised subject matter jurisdiction. In doing so, we discuss the applicability of the law of the case doctrine. We then turn to Sola's argument that summary judgment was inappropriate in this case. And finally, we determine whether the trial court erred in awarding attorney's fees.

## I.    Did the Trial Court Properly Exercise Subject Matter Jurisdiction?

In its first issue, Sola contends that "because the wells are located in Louisiana, the trial court had no subject matter jurisdiction over the controversy." Silverbow urges that the law of the case doctrine bars Sola from relitigating this issue. While the law of the case doctrine is not mandatory or jurisdictional, we exercise our discretion to consider it here because: (1) it is raised by Silverbow and (2) we need not reach the merits of Sola's subject matter jurisdiction argument if the doctrine applies. *See City of Houston v. Jackson*, 192 S.W.3d 764, 769 (Tex. 2006).

### A. Law of the Case

The law of the case doctrine mandates that the ruling of an appellate court on a question of law raised on appeal will be regarded as the law of the case in all subsequent proceedings unless clearly erroneous. *See In re Prudential Sec., Inc.*, 159 S.W.3d 279, 283 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding) (citing *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003)). The law of the case applies only to questions of law and does not apply to questions of fact. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). The law of the case applies if the facts in the second trial are substantially the same as in the first trial or so nearly the

4

same that they do not materially affect the legal issues involved in the second trial. *J.O. Lockridge Gen. Contractors, Inc. v. Morgan*, 848 S.W.2d 248, 250 (Tex. App.—Dallas 1993, writ denied) (citing *Berryman v. El Paso Nat. Gas Co.*, 838 S.W.2d 610, 614 (Tex. App.—Corpus Christi 1992, n.w.h.)). The doctrine's intent is to achieve uniformity of decision as well as judicial economy and efficiency. *See id.*; *see also In re L.R.*, 416 S.W.3d 675, 677 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Paradigm Oil, Inv. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012)).

Prior to the case before us, Sola filed a petition for writ of mandamus in this court. *In re Sola Energy Res., LLC*, No. 14-19-00493-CV, 2019 WL 3121841, at *1 (Tex. App.—Houston [14th Dist.] July 16, 2019) (mem op.).[2] Denial of a mandamus petition does not necessarily establish law of the case. *See Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007). A writ of mandamus is discretionary, so its denial without comment on the merits does not prevent an appellate court from considering the matter in a subsequent appeal. *Id.* When applying the doctrine, "the decision to revisit the conclusion is left to the discretion of the court under the particular circumstances." *Jackson*, 192 S.W.3d at 769.

Our memorandum opinion denying Sola's petition briefly explained the nature of its jurisdictional complaint and concluded: "Because [Sola] has not established that the trial court lacks subject matter jurisdiction, we deny the petition for writ of mandamus." *See In re Sola*, 2019 WL 3121841, at *1. This conclusion is not a comment on the merits of Sola's petition because it does not explain our reasons for denying mandamus relief. *See In re L.R.*, 416 S.W.3d at 677 (declining to apply the law of the case doctrine when denial of the mother's mandamus petition

---

[2] Sola also filed a petition for writ of mandamus in the Supreme Court of Texas, which was denied. *See In re Sola Energy Resources, LLC*, No. 19-00655 (Tex. Nov. 6, 2020) (mem op.).

5

did not comment on the merits); *see also Siemens AG v. Houston Cas. Co.*, 127 S.W.3d 436, 442 (Tex. App.—Dallas 2004, pet. dism'd) (denial of mandamus petition did not constitute law of the case where court stated that relator "failed to show itself entitled to the relief requested").

In the case before us, we decline to apply the law of the case doctrine because our prior decision did not explain our reasons for denying Sola's mandamus relief. Accordingly, we turn to our analysis of whether the trial court properly exercised jurisdiction over the controversy.

### B. Subject Matter Jurisdiction

Sola claims that the trial court lacked jurisdiction to adjudicate the dispute between Sola and Silverbow because the property at issue is located in Louisiana. Silverbow argues that its breach of contract claim is an in personam action that does not concern the title or ownership interest in the three wells at issue. We agree.

Subject matter jurisdiction is "essential to a court's power to decide a case." *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000)). A trial court has subject matter jurisdiction "when the nature of the case falls within the general category of cases the court is empowered, under applicable statutory and constitutional provisions, to adjudicate." *Diocese of Galveston-Hous. v. Stone*, 892 S.W.2d 169, 174 (Tex. App.—Houston [14th Dist.] 1994, orig. proceeding). A court acting without such power commits fundamental error. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). A judgment rendered without subject matter jurisdiction cannot be considered final. *Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (citing Restatement (Second) of Judgments § 12 cmt. b (1982)).

Texas courts have no subject matter jurisdiction to adjudicate title to realty in another state or country. *See, e.g., Trutec Oil & Gas, Inc. v. Western Atlas Int'l, Inc.*, 194 S.W.3d 580, 583 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Holt v. Guerguin*, 163 S.W. 10, 12 (1914)); *Kelly Oil Co., Inc. v. Svetlik*, 975 S.W.2d 762, 764 (Tex. App.—Corpus Christi 1998, pet. denied); *Miller v. Miller*, 715 S.W.2d 786, 788 (Tex. App.—Austin 1986, writ ref'd n.r.e.). But a Texas court with jurisdiction over the parties may enforce a party's personal or contractual obligation that indirectly involves property in another state. *See Devon Energy Prod. Co., L.P. v. KCS Res., LLC*, 450 S.W.3d 203, 216 (Tex. App.—Houston [14th Dist.] 2014, pet denied) (citing *Tex. & Pac. Ry. Co. v. Gay*, 26 S.W. 599, 605–06 (Tex. 1894)). Subject matter jurisdiction presents a question of law that we review de novo. *See Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013); *see also Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

Sola's motion to dismiss attacking the trial court's ability to exercise subject matter jurisdiction is the functional equivalent of a plea to the jurisdiction. *Anderson v. City of San Antonio*, 120 S.W.3d 5, 7 (Tex. App.—San Antonio 2003, pet. denied). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a cause of action. *Blue*, 34 S.W.3d at 554. In deciding a plea to the jurisdiction, a court must not weigh the claims' merits and should consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). When considering a trial court's order on a plea to the jurisdiction, we first review the plaintiff's pleadings. We construe the pleadings in the plaintiff's favor and look to the pleader's intent. *Id.* To determine the nature of Silverbow's claims, we turn to Silverbow's last live pleading, and the relevant evidence in the record.

While Silverbow's claims "indirectly involve[] property in another state," a

review of the facts alleged in the pleadings, the causes of action, and the evidence pertinent to the jurisdictional inquiry points to a finding that Silverbow's core complaint is that Silverbow was seeking to enforce rights granted under the Purchase Agreement, which required Sola to plug and abandon oil and gas wells and reclaim the surface. Silverbow was not seeking a transfer of leasehold rights as was the case in *Carmichael*. *See Carmichael v. Delta Drilling Co.*, 243 S.W.2d 458, 460 (Tex. Civ. App.—Texarkana 1951, writ ref'd) (explaining that the plaintiffs sought an assignment of an undivided one-fourth interest in a lease on land located in Indiana held in the name of the defendant). Neither was Silverbow seeking a conveyance or adjudication of title as in *Miller*. *See Miller v. Miller*, 715 S.W.2d 786, 789 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (explaining that the cross-claimant sought a declaration that title to Oklahoma property passed to him under the will at issue).

Thus, the trial court was not required to determine title to land in Louisiana and no relief was sought requiring the transfer of title to land in Louisiana. *See Hartman v. Sirgo Operating, Inc.*, 863 S.W.2d 764, 767 (Tex. App.—El Paso 1993, writ denied). Accordingly, we overrule Sola's first issue and find that the trial court properly exercised subject matter jurisdiction because Silverbow's suit did not require the adjudication of property interests outside of Texas.

## II.    Did the Trial Court Err in Granting Summary Judgment?

In its second issue, Sola asserts the trial court erred in granting summary judgment favoring Silverbow because Silverbow failed to establish: (1) it has standing to sue; (2) Sola is the title owner; (3) the plugging obligation under the agreement matured; and (4) it suffered damages. We disagree.

We review a trial court's grant of summary judgment under a de novo standard. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex.

8

2009) (per curiam). In a traditional motion for summary judgment, the movant bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The nonmovant has no burden to respond to a traditional motion for summary judgment unless the movant conclusively establishes each element of its cause of action or defense as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999).

### A. Standing

Sola contends that Silverbow did not have standing because Silverbow was "not a signator" to the Purchase Agreement. Though not explicitly articulated, we suspect that Sola's argument is that there is no privity of contract between the parties.

Standing is a component of the trial court's subject matter jurisdiction. *Tex. Air Control Bd.*, 852 S.W.2d at 445–46. As a component of subject matter jurisdiction, it cannot be waived, and it cannot be conferred by agreement. *See id.* (holding standing cannot be waived); *In re K.K.C.*, 292 S.W.3d 788, 790 (Tex. App.—Beaumont 2009, no pet.) (holding "[a] party generally cannot confer or obtain standing by consent or agreement"). "A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority. . . ." *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005) (quoting *Nootsie Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)). Standing pertains to a person's justiciable interest in a suit. *Austin Nursing Ctr.*, 171 S.W.3d at 848. The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *Id.* at

849.

This court has previously explained that "while the question of whether a party is entitled to sue on a contract is often informally referred to as a question of 'standing,' it is not truly a standing issue because it does not affect the jurisdiction of the court; it is, instead, a decision on the merits." *Heartland Holdings Inc. v. U.S. Trust Co. of Tex.*, 316 S.W.3d 1, 6–7 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894, 898 (Tex. App.—Houston [14th Dist.] 2007, no pet.)). A challenge to a party's privity of contract is a challenge to capacity, not standing, and requires compliance with rule 93 of the Texas Rules of Civil Procedure. *See John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 650 (Tex. App.—Dallas 2013, pet. denied). Unlike standing which may be raised at any time, a challenge to a party's capacity must be raised by a verified pleading in the trial court. *See* Tex. R. Civ. P. 93(1), (2).

Thus, in the case before us, the proper inquiry is not whether Silverbow has standing to bring this action, but rather whether it can recover in the capacity in which it sued, i.e., Silverbow. *See Nine Greenway Ltd. v. Heard, Goggan, Blair & Williams*, 875 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

We need not address whether Silverbow could recover in the capacity in which it sued because Sola waived this argument by failing to comply with the requirements of Rule 93 to challenge capacity and cannot raise this issue for the first time on appeal. *See* Tex. R. Civ. P. 93 ("A pleading setting up any of the following matters, unless the truth of such matter appears of record, shall be verified by affidavit. That the plaintiff has not legal capacity to sue."); Tex. R. App. P. 33.1. Accordingly, we overrule Sola's standing argument.

**B. Ownership/Transfer of Title**

Sola suggests that summary judgment was improper because Silverbow failed to establish "ownership" or "transfer of title." On the record before us, Silverbow sued Sola for breach of contract[3], specific performance[4], and promissory estoppel.[5] Therefore, on summary judgment, Silverbow was required to show that there was no genuine issue of material fact on its claims and that it was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c).

Notwithstanding Sola's contention, none of Silverbow's claims against Sola required it to establish "ownership" or "transfer of title." *See id.* ("A party seeking to recover upon a claim . . . may . . . move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.") Accordingly, we overrule Sola's argument that Silverbow failed to establish ownership or transfer of title because Silverbow was not required to do so.

### C. Ripeness

Sola posits that the trial court erred in granting Silverbow's summary judgment because Silverbow's breach of contract was "not ripe for adjudication."

---

[3] To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach. *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

[4] Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract. *Blue Moon Venture, L.L.C. v. Horvitz*, No. 14-09-00459-CV, 2010 WL 4013533, at *1 (Tex. App.—Houston [14th Dist.] Oct. 14, 2010, no pet.) (mem. op.) (citing *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied)). "A party seeking specific performance must plead and prove (1) compliance with the contract including tender of performance unless excused by the defendant's breach or repudiation and (2) the readiness, willingness, and ability to perform at relevant times." *Id.* (citing *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593–94, 601 (Tex. 2008)).

[5] The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance by the promisor, (3) substantial and reasonable reliance by the promisee to its detriment, and (4) enforcing the promise is necessary to avoid injustice. *Sipco Servs. Marine v. Wyatt Field Serv. Co.*, 857 S.W.2d 602, 605 (Tex. App.—Houston [1st Dist.] 1993, no writ).

We disagree.

As explained above, the elements of a breach of contract action are: (1) a valid contract existed between the plaintiff and the defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach. *See West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). A breach occurs when a party fails or refuses to do something the party has promised to do. *Id.* It is well-settled that an action for breach of contract accrues immediately upon breach. *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).

Here, the parties entered into a written contract whereby Sola assumed and accepted "sole and exclusive responsibility for and agree[d] to pay all costs and expenses associated with Plugging and Abandonment of all wells and facilities associated with the Properties." In Silverbow's amended petition, it averred that the "Bureau of Land Management . . . issued a demand to [Silverbow] that the Subject Wells be plugged and abandoned." In response, Silverbow "notified Sola in writing of this demand along with a reminder that these obligations were its sole responsibility." Silverbow's demands went unanswered, and there is no evidence in the record that Sola complied with its contractual obligations.

Accordingly, we conclude Sola's argument is without merit because there is legally sufficient evidence that Sola breached the terms of the Purchase Agreement when it failed to plug and abandon the wells.

### D. Damages

In its final argument, Sola contends there was "no dispositive summary judgment evidence that Silverbow suffered any damages." To recover on summary

judgment, Silverbow was required to establish conclusively the damages actually sustained as a result of the breach. *See Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 523 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see also McKnight v. Hill & Hill Exterminators, Inc.*, 689 S.W.2d 206, 209 (Tex. 1985). The ultimate goal in measuring damages for a breach of contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *See Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 328 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The normal measure of damages in a breach of contract case is the benefit-of-the-bargain measure, the purpose of which is to restore the injured party to the economic position it would have been in had the contract been performed. *SAVA Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 317 n.6 (Tex. App.—Dallas 2004, no pet.). A trial court has discretion to award damages within the range of the evidence presented at trial. *City of Hous. v. Harris Cnty. Outdoor Adver. Ass'n*, 879 S.W.2d 322, 334 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

In the present case, Silverbow adduced evidence in its summary judgment motion that the Bureau of Land Management estimated that the cost to plug wells was $300,000 per well. Therefore, the Bureau of Land Management estimate for the plugging and abandonment of all three wells was $900,000. Silverbow also presented evidence of reasonable estimates it obtained to plug and abandon the three wells from Delta Seaboard, LLC. Specifically, Delta Seaboard placed a bid to plug and abandon the USA 2 #1 well for $136,025, the USA 11 #1 for $154,450, and the Hudson 2 #1 for $146,825. The total bid to plug and abandon the three wells was $437,300. Based on the evidence presented, the trial court ordered Sola to either (1)

13

plug and abandon and reclaim the surface area of wells USA 2 #1, USA 11 #1, and Hudson 2 #1 or pay Silverbow $437,300 to plug and abandon and reclaim the surface areas of the wells.

Accordingly, Silverbow has presented sufficient evidence to support its claim for damages, and the trial court was within its discretion to award damages within the range of evidence presented. *See O & B Farms, Inc. v. Black*, 300 S.W.3d 418, 422 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("Damages must be established with reasonable certainty, not mathematical precision.") We overrule Sola's second issue and find that the trial court properly granted summary judgment on Silverbow's breach of contract claim.

### III.    Did the Trial Court Err in Awarding Attorney's Fees?

In Sola's third issue, it protests the trial court awarding Silverbow $84,948.88 for attorney's fees, $25,000 for Silverbow's successful appeal at the Texas Court of Appeals, and $20,000 for Silverbow's successful appeal at the Supreme Court of Texas. Sola posits that (1) the language of the indemnity provision does not allow for the recovery of attorney's fees, (2) Silverbow was not authorized to recover attorney's fees in a breach of contract claim against a limited liability company, and (3) the trial court's order was unenforceable because the award of appellate attorney's fees was unconditional. Silverbow contends that the broad language of the Purchase Agreement is sufficient to cover losses, costs, and expenses (including attorney's fees) resulting from Sola's "ownership or operation" of the well, and Sola mischaracterizes the trial court's order. We conclude that the broad language of the Purchase Agreement permitted recovery of attorney's fees, and the award of appellate attorney's fees was not unconditional.

Generally, an award or denial of attorney's fees is reviewed under an abuse of discretion standard. *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 592

(Tex. 1996); *Oake v. Collin Cnty.*, 692 S.W.2d 454, 455 (Tex. 1985); *Pyles v. United Servs. Auto. Ass'n*, 804 S.W.2d 163, 164 (Tex. App.—Houston [14th Dist.] 1991, writ denied). "The test for abuse of discretion is whether the trial court's decision was arbitrary or unreasonable." *See Pyles*, 804 S.W.2d at 164. Attorney's fees may not be recovered from an opposing party unless provided for by statute or contract between the parties. *Mayfield*, 923 S.W.2d at 593. Texas adheres to the American Rule for the award of attorney's fees, under which attorney's fees are recoverable in a suit only if permitted by statute or by contract. *See, e.g., Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 120 (Tex. 2009); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006).

### A. Broad Language of Purchase Agreement Permitted Recovery of Attorney's Fees

The Purchase Agreement identifies at least three separate provisions relating Sola's responsibility to hold Silverbow harmless from "claims" arising out of Sola's ownership and operation of the wells contained on the Property. In its relevant portions, the Purchase Agreement provides:

> **16. Indemnities** . . . [Sola] releases [Silverbow], from and shall protect, defend, indemnify and hold [Silverbow] harmless from and against and assumes: (i) [a]ll losses and claims relating to, arising out of, or connected with, directly or indirectly, ownership or operation of the properties or any part thereof, or this transaction, prior to, on, or after the effect time (no matter when asserted); [and] (ii) losses relating to . . . (D) breach of contract. . . . and/or (G) environmental claims whether arising or accruing prior to, on, or after the effective time.

> **22. Plugging and Abandonment.** [Sola] expressly assumes and accepts sole and exclusive responsibility for and agrees to pay all costs and expenses associated with Plugging and Abandonment of all wells . . . and may not claim the fact that Plugging and Abandonment operations are not complete or that additional costs and expenses are required to complete Plugging and Abandonment operations. . . . [Sola] releases [Silverbow] from and shall fully protect, defend, indemnify,

15

and hold [Silverbow] harmless from and against any and all losses and claims relating to, arising out of, or connected with, directly or indirectly, plugging and abandonment operations, no matter whether arising before, on or after the effective time and without regard to any negligence, strict liability or other fault of [Silverbow] and/or its predecessors-in-interest.

**46. <u>Indemnities Applicability.</u>** The release, defense, indemnification and hold harmless provisions provided for in this agreement shall be applicable whether or not the claims, demands, suits, causes of action, losses, damages, liabilities, fines, penalties and costs (including attorneys' fees and costs of litigation) in question arose solely or in part from the active, passive or concurrent negligence, strict liability, breach of duty, . . . or other fault of any indemnified party, or from any pre-existing defect. [original in all caps].

In construing a written contract, "our primary concern is to ascertain the intentions of the parties as expressed in the instrument." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). The record before us establishes that the plain language of the written agreement is clear that Sola agreed to "protect, defend, indemnify and hold [Silverbow] harmless" from losses and claims relating to or arising out of plugging and abandonment operations, as well as breach of contract and environmental claims. Sola accepted "sole and exclusive responsibility for and agreed to pay all costs and expenses associated with plugging and abandonment of all wells and facilities associated with the Properties." When Silverbow notified Sola of its plugging and abandonment obligation, Sola breached the Purchase Agreement by failing to perform in accordance with the terms of the agreement. Because the Purchase Agreement provides that Sola assumed sole responsibility for holding Silverbow harmless from losses relating to breach of contract or environmental claims, the trial court did not abuse its discretion in awarding Silverbow attorney's fees for enforcing Sola's plugging and abandonment obligations as contemplated in the Purchase Agreement. *See, e.g., Devon SFS Operating, Inc. v. First Seismic Corp.*

No. 01–04–00077–CV, 2006 WL 374257, at *8 (Tex. App.—Houston [1st Dist.] Feb. 16, 2006, no pet.) (mem. op.) (holding broad and inclusive indemnity provision permitted recovery of attorney's fees).

Accordingly, we find that the broad language of the Purchase Agreement provided for Silverbow's recovery of attorney's fees against Sola.

### B. Statutory Attorney's Fees Inapplicable

We need not address Sola's contention that attorney's fees are not recoverable against a limited liability company because Silverbow's claim for attorney's fees arises out of contract and not statute. *See Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 452–53 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

### C. Award of Appellate Attorney's Fees Was Not Unconditional

Sola complains that the award of appellate attorney's fees was not conditioned on Silverbow's success in the appeal. We review a trial court's award of appellate attorney's fees under the abuse of discretion standard. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998). A trial court abuses its discretion when it acts "arbitrarily, unreasonably, or without reference to legal principles." *Berkel & Co. Contractors, Inc. v. Lee*, 612 S.W.3d 280, 287 (Tex. 2020). "A trial court may not penalize a party for taking a successful appeal." *Keith v. Keith*, 221 S.W.3d 156, 171 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Thus, an unconditional award of appellate attorney's fees is improper. *Id.* Trial courts "must condition the award of appellate attorney's fees upon the appellant's unsuccessful appeal." *Id.*

On the record before us, the trial court ordered Sola to pay Silverbow $25,000 in attorney's fees "for Silverbow's successful appeal at the Texas Court of Appeals" and $20,000 in attorney's fees "for Silverbow's successful appeal at the Supreme Court of Texas." Thus, the award of appellate attorney's fees were not unconditional;

17

they were conditioned upon "Silverbow's success" or put another way, Sola's unsuccessful appeal. Thus, the trial court did not abuse its discretion in awarding Silverbow appellate attorney's fees contingent upon on their success in our court or the Texas Supreme Court. Because Sola does not challenge the reasonableness of the amount that was awarded, we do not address that issue.

Accordingly, we overrule Sola's third issue and find that Silverbow was entitled to attorney's fees as provided in the written contract, and the trial court did not abuse its discretion in awarding appellate attorney's fees because the award was conditioned upon Silverbow's success on appeal.

### *Conclusion*

We affirm the trial's court judgment as challenged on appeal.


/s/     Frances Bourliot
Justice


Panel consists of Justices Bourliot, Hassan, and Wilson.